## The Commonwealth's Appeal.
## Avery's Estate.

A testator devised his whole estate to his executors, in trust for legatees and devisees; the widow refused to take under the will, but subsequently, by an arrangement with the executors, approved by the Orphans' Court, accepted the sum of $80,000, which was less than her share of the estate, and relinquished her claim to the residue: *Held*, that she took this sum under her paramount title as widow, and not as a payment out of the fund bequeathed to the executors in trust; and that it was not, therefore, subject to the collateral inheritance tax.

It is the duty of executors, where a part of the estate cannot be settled up within the year, to estimate the amount thus suspended, and pay the collateral inheritance tax on the balance; otherwise, they are chargeable with interest thereon at the rate of 12 per cent. per annum.

APPEAL from the Orphans' Court of *Allegheny county*.

This was an appeal by The Commonwealth from the decree of the court below, upon the accounts of the Executors of Charles Avery, deceased.

Charles Avery died in 1858, leaving a widow, but neither father, mother, children, nor lineal descendant. By his will he devised and bequeathed his whole estate to his executors in trust for certain purposes therein mentioned. The personal estate amounted to $438,760.30, and the real estate to $30,900.

The widow, Martha Avery, refused to accept the provision made for her in the will; but subsequently, by an arrangement with the executors, approved by the Orphans' Court, she received from them the sum of $80,000, and relinquished all claim to the residue of the estate.

A part of the personal estate amounting to upwards of $100,000 was involved in difficulties, and could not be settled up within the year. And it was claimed on behalf of the Commonwealth that the sum of $80,000 paid to the widow was chargeable with the collateral inheritance tax; and also that the collateral inheritance tax, on the estate that passed by the will to the executors, not having been paid within one year from the death of the testator, was chargeable with interest at the rate of twelve per cent. per annum.

The court below decided both points against the Commonwealth, whereupon this appeal was taken.

*Roberts & Mellon*, for the Commonwealth, cited Galbraith *v.* Commonwealth, 2 *Harris* 258; Commonwealth *v.* Nancrede, 3 *Casey* 389; Tyson's Appeal, 10 *Barr* 220; Tritt *v.* Crotzer, 1 *Harris* 451.

*A. W. Loomis*, for the appellees.

[The Commonwealth's Appeal.]

The opinion of the court was delivered by

THOMPSON, J.—The denomination " collateral inheritance tax," at once indicates upon whom its burdens rest when demandable. It is, of course, upon every taker who does not stand in the relation to the testator or intestate of " father, mother, husband, wife, children, and lineal descendants." These are the words of the Act of Assembly. Whenever, therefore, the estate or any portion of it passes to others than the excepted classes, the duty of paying the tax follows.

The question here is, whether the sum of $80,000, paid to the widow of the testator, is to be regarded as a payment to her in virtue of her rights under the laws of the Commonwealth, as the widow of the testator, or is to be deemed a payment out of an estate which had passed by the will to the executors in trust for devisees and legatees.

It may be conceded that it did, in the first place, contingently pass, for the purposes mentioned in the will. But it was subject, of course, to rights which it was not in the power of the testator to control, and one of this kind was the right of the widow to determine and elect whether she would take under the will or under the intestate laws of the Commonwealth. The will could not in the least interfere with this right, and when exercised, and her election made as to that portion to which she would be entitled, the will would at once become inoperative, and it would not pass to devisees and legatees—it would remain in her by a paramount title.

Here it clearly appears that the widow refused to take under the will, and did elect to claim her dower in the estate. The executors yielded to it, for they could not do otherwise; and by an arrangement with her, she agreed to take less than the whole amount the law would have allowed her, at the same time relinquishing her right in the residue, for the purpose of aiding in carrying out the intentions of the testator. But notwithstanding this, we are asked to consider the sum thus fixed and paid her, as a payment out of the fund passed by the will to the beneficiaries under it. This we cannot do. She had a clear, undoubted paramount right to their's under the will, and she exercised it. The form of the transaction does not change its substance.. Her interest in the estate only passed as we have said, contingently, and it was settled and fixed that it did not pass, the moment she exercised her right of election to claim by law. It did not, therefore, pass to the legatees and devisees under the will, and was therefore not paid out of an estate so passing. But she took less than the law allowed her. Can this make any difference? Not without we adopt the logic, that because she did not take all that she might have claimed, in virtue of her paramount right, that what she did take was, therefore, not under and by virtue of it. This

[The Commonwealth's Appeal.]

we cannot agree to. She exercised her entire rights as a widow, by taking the sum mentioned, and relinquished her right to the balance, which would pass, of course, under the will.

We must look at the true character of the transaction, and in doing so, we cannot permit it to be submerged in mere form. In doing so, we but follow precedent to be found in some late cases. The Commonwealth v. Williams's Executors, 1 *Harris* 29, was a case in which there was a devise to a daughter for life, with power of appointment in fee by will. She executed the power by devising to collateral heirs to herself, but they were lineal descendants of her testator. It was held, that they took under the will of their ancestor and not under the appointor, and that therefore they were not liable to pay a collateral inheritance tax on the estate. So, in The Commonwealth v. Nancrede, 8 *Casey* 389, it was determined, that a devise to a child, adopted under the provisions of the Act of 4th May 1855, did not exempt him from the payment of a collateral inheritance tax, although the act declares that such adopted child "shall have all the rights of a child and heir of such adopting parent." The artificial relation thus created was undoubtedly good, as to all but the Commonwealth, but she did not choose to recognise it as equivalent to the natural relation, when it conflicted with her claim to revenue. These cases point to the duty of looking to the real relations of the parties, in ascertaining who may be subject to the payment of this kind of tax. We have done so in this case, and we think that the sum of $80,000 was not chargeable with the collateral inheritance tax. The Commonwealth has not much reason to complain of the arrangement, for had the widow taken the entire amount she might have claimed out of the estate, it would probably have reached to $100,000 more than she did take, and thus the collateral inheritance tax on this sum would have been lost, whereas now, it either has been, or will be paid into the treasury. The report of the auditor and the decree of the Orphans' Court confirming it, in the matter of the tax on the money paid the widow, were right.

I do not think that the reason given by the auditor for not charging interest on the tax is sufficient. It was just as competent for the executors to estimate the sum or amount of personal estate involved in difficulties and thus suspended, as it was for the auditor; and they should have done so, and paid the tax on the balance. The decree in this particular must be reversed, with directions to the Orphans' Court to alter the same so as to allow interest on the tax according to the Act of Assembly, which the auditor finds as payable on the estate, excluding the suspended items reported by him.

And now, to wit, November 25th 1859, decree of the Orphans' Court affirmed, so far as regards the claim of a collateral inheritance tax on the sum of $80,000

paid to the widow of Charles Avery, deceased; and reversed so far as it relates to the interest on the tax, with directions to the court below to correct the decree in accordance with this opinion.

STRONG, J., dissented from so much of this opinion as holds that the $80,000 paid to the widow is not liable to the collateral inheritance tax.