Commonwealth ex rel. Stack *v.* Stack, Appellant.

148

Argued May 8, 1940. 

Before Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*William L. Jacob,* for appellant.

*Samuel Goldstock,* for appellee.

OPINION BY BALDRIGE, J., July 19, 1940:

This appeal had its origin in a proceeding brought by a wife against her husband for maintenance and support of herself and minor children under the Act of April 13, 1867, P. L. 78, as amended by the Acts of March 5, 1907, P. L. 6, April 15, 1913, P. L. 72 and June 15, 1917, P. L. 614, 18 PS §1251 et seq. The parties were married September 30, 1918. Five of the children born to that union, ranging in age from 7 to 15 years, are now living.

Difficulties arose between the husband and wife in 1937, owing to the presence of David K. Frame, a truck driver for the A. & P. Company, in the home. He had been a friend of the appellant, at whose suggestion Frame became a boarder in the Stack home in January of that year. A few months thereafter the husband began to entertain suspicions that too friendly relations existed between his wife and the boarder. Stack, in July 1937, as a protest against the presence of Frame, left his home.

The wife then made information against her husband charging him with non-support. Shortly thereafter she brought a divorce action also, charging her husband with cruel and barbarous treatment and indignities to the person. Judge THOMPSON, on September 21, 1938 after a lengthy hearing, entered a decree in the libellant's favor. An appeal was taken by the respondent to this court, but as it was not prosecuted further a non pros was entered April 10, 1939. The desertion and non-support proceeding had not in the meantime been pressed.

On June 7, 1938, the husband filed a petition praying for the custody of his children. A hearing was finally

had before Judge MACDONALD to determine by agreement of the parties both the questions of non-support and the custody of the children. In the testimony it appeared that the wife prior to her marriage, had been a Protestant and the husband a Catholic. She became a convert to the Catholic religion and the marriage was performed by a priest. The five children were baptized in and taught the Catholic faith. The husband testified that after the separation Mrs. Stack returned to the Protestant church and that she was training the children in her religion. She testified that she and her husband sent the children to a United Presbyterian Sunday School for 6 years prior to his withdrawal from the home. This testimony was denied by the husband, who stated that the children went there solely to attend social events.

It was agreed by the parties that the voluminous testimony taken in the divorce action should be admitted in evidence and be considered by the judge in disposing of the issue before him. There was offered in evidence an agreement dated June 18, 1937, between the parties, wherein it was stipulated that Stack would pay $60 per month to maintain, educate, and support his five children in consideration of the wife's making no further claims on him. Nothing was said therein relative to their religious training.

Stack is employed by a railway express company at a salary of $160 per month. His occupation requires that he be out of Pittsburgh, with the exception of once or twice a week, for periods of 24 to 36 hours each. He does not have a home in which to keep the children. Judge MACDONALD, in his opinion, stated that he did not believe the suspicions of Stack "who himself appears to be an impetuous and temperamental individual as evidenced by the fact that it was necessary for the court to call upon the sheriff to quiet him during the trial of this case" were well founded. He was con-

·vinced that there were no improper or immoral relations between Mrs. Stack and Frame, who by paying board contributed materially to the relief of the economic pressure of the Stacks. The judge stated further: "It is our opinion that since Mrs. Stack agreed to accept the Roman Catholic faith at the time of her marriage, and since each of the children was baptized in that faith and was educated therein for a number of years, the children should be continued in their education in such faith until such time as they reach the age which enables them to properly exercise their own discretion in such matters, and that a failure to accede to the admonition hereby given will be given due consideration in any further proceedings in this court with respect to either custody of said children or the amount to be paid for their support." An order dated February 6, 1939, was entered giving the custody of the children to the mother and directed the father to pay the sum of $60 per month toward the support of only the children.

The appellant on April 22, 1939, presented another petition praying for the custody of the children, alleging that they were not receiving the proper religious training, and that he had made arrangements to have them boarded and educated at a Catholic institution. A hearing was had before Judge McKim on May 25, 1939. It was developed that the wife had consulted Judge MacDonald after his order had been made and that he informed her that she could send the children to a Protestant church if they went to mass first; that thereafter they attended mass and then they went to a Presbyterian Sunday School.

On August 26, 1939, before any action was taken by Judge McKim, Stack presented a petition asking that the court reduce the support order and that the children be permitted to see him at his place of residence. The parties thereafter agreed that the application for the reduction of the support order should be considered as

one for a vacation thereof. It appears that in June or July of 1939 Mrs. Stack married Frame after which she and the children went to his home where they are now living.

Judge McKim, on November 22, 1939, entered a decree refusing to disturb the amount previously determined as proper for the support of the children by Judge MacDonald on February 6, 1939, but he gave the right to the petitioner to visit the children at a place to be agreed upon by counsel with approval of the court. The husband thereafter in an additional petition requested that the order made by Judge McKim be argued before the court in banc. This application was granted and after an argument was had the court in an opinion and order written by Judge McKim, filed February 19, 1940, refused to vacate the order of February 6, 1939. This appeal followed.

In our judgment the defendant failed to carry the burden imposed upon him of showing by competent evidence facts that would justify the revocation of the order. We do not disturb an order of support by substituting our judgment for that of the trial judge, who has used discretion as to the amount which the husband shall pay for his children's support, if based upon competent evidence: *Commonwealth of Pa. ex rel. Suess v. Suess,* 100 Pa. Superior Ct. 437; *Commonwealth (ex rel. Snyder) v. Snyder,* 120 Pa. Superior Ct. 189, 182 A. 62; *Commonwealth ex rel. v. Iacovella,* 121 Pa. Superior Ct. 139, 182 A. 727; *Commonwealth v. Gensemer,* 122 Pa. Superior Ct. 456, 185 A. 867.

It makes no difference that the complaint was made by the wife who later obtained a divorce. That in no way affected the power of the court to compel the father to support the children, nor is his duty and responsibility of maintaining and supporting his minor children altered by the decree in the divorce proceeding:

19 C. J. §813, p. 353; *Commonwealth v. Edgar*, 44 Pa. Superior Ct. 496, 499.

Undoubtedly proper religious training of children is an important matter and should be taken into consideration by the courts in determining the question of their custody. Judge MACDONALD very clearly imposed upon the mother the obligation of having the children attend the Catholic church until they reached the time when they were of an age to exercise their own discretion in the matter of religion. If she neglects to obey that direction, the court, as it continues to retain control over this support order, may take such further action as the facts warrant. We are not greatly impressed with the appellant's alleged concern respecting the religious training of the children. Religion evidently was not a very important factor in the marital life of these parties. The subject, as above noted, was not mentioned in the agreement entered into that the wife should have the custody of the children, nor was the failure of the mother to send the children to a church of the father's religious faith assigned as a reason in his original petition to obtain their custody.

The Act of June 26, 1895, P. L. 316, §2, 48 PS §92, provides that in awarding the custody of children, regard shall first be had to the fitness of the parent and the best interest and permanent welfare of the child. Taking into consideration that this appellant has been divorced from the wife on the ground of cruel and barbarous treatment and indignities to her person, and the comment of Judge MACDONALD respecting Stack's demeanor at the hearing, we are not convinced that he is the proper person to be given the custody of these children. Furthermore, as above noted, he has no home where he can take them. The children are of tender age and one of them, according to the testimony, is not physically strong. They require the kind of training and supervision that only a mother, who is better

fitted than the father to have charge of them, can give: *Commonwealth ex rel. Keller v. Keller,* 90 Pa. Superior Ct. 357.

As we said in *Commonwealth ex rel. Fortunes v. Manos,* 140 Pa. Superior Ct. 352, 13 A. 2d 886: "The best of institutions, however kindly and efficient its management is but an indifferent foster parent and, with rare exceptions, is not as productive of desirable results as the average home. The placing of a normal young child in an institution can be justified only as a temporary measure."

It is true that a stepfather who takes his wife's children into his home may be considered as standing in loco parentis and must assume certain responsibilities: *Lantz v. Frey and Wife,* 14 Pa. 201; *Brown's Appeal,* 112 Pa. 18, 5 A. 13. In those cases, however, relied upon by the appellant in support of the contention that it is the stepfather's duty to support and maintain these children, the facts are not at all analogous to those in the case at bar, where the rights of the children are primarily involved. When Frame married the mother of these children there was in effect an order of the court requiring the natural father to pay $60 toward their support. The marriage and Frame's taking the children into his home did not abrogate that order. The natural father's obligation continued.

A stepfather as such is under no obligation to support the children of his spouse by a former marriage. This is especially true if the children have some income. Notwithstanding they may be taken into the stepfather's house, there is no presumption that such support is gratuitous on the husband's part: 46 C. J. §183, p. 1388; 20 R. C. L. §10 p. 594; *Estate of McCormick Minors,* 18 Phila. Reports 60.

The existence of the order of the court at the time of the mother's second marriage and the demanding of the natural father's support negatives the idea that

these children were taken by Frame into his home with the intention of assuming all support and maintenance of them. This appellant cannot after conduct that justified the severance of his marital relations take advantage of his own wrongdoing and be relieved of his parental duty of supporting his offspring.

In view of our disposition of this case it is unnecessary to consider the contention of the appellee that this appeal was not taken in time.

Order of the court below is affirmed at appellant's costs.