## Commonwealth ex rel. v. Iannucci

*Theodore C. Jenkins, Jr.*, for Commonwealth.
*Joseph W. DeFuria*, for defendant.

MACDADE, P. J., April 10, 1945.—This is a proceeding where defendant, former husband (now divorced) of Eva Giampalmi, formerly Iannucci, and the father of two children born of this union, is endeavoring by petition to this court to vacate an order thereof against him for the support and maintenance of his two minor children by his *first* wife, she being the said Eva Giampalmi and the relator. These immediate parties were divorced on June 13, 1941, and the said minor children have been in the custody of their mother ever since.

The reasons assigned to evade his parental responsibility for support of these children are several-fold; for instance, one is that he obtained his divorce upon the ground of adultery; that relator subsequently married the alleged paramour; and, following relator's second marriage, her husband (second) voluntarily took the aforesaid children into his home *as members of his family and stood* "in loco parentis" to them; which means, of course, he (defendant) proposes to evade his responsibility for the support of his children and that the second husband must assume the burden of supporting and maintaining the two children; thus relieving this defendant of all responsibility. To sus-

tain this remarkable proposition under the circumstances of the instant case, we are referred to Commonwealth v. Goodfellow, 71 Pitts. 818, 24 Lack. 290 (1923), and In re Gross, 17 D. & C. 766.

We shall discuss these cases later.

Relator denies the truth of defendant's statements and the logic of his reasoning. The testimony in this case taken on March 9, 1945, and March 29, 1945, discloses the following facts:

The original order against this defendant was made on June 13, 1940, and it was in effect at the time the parties were divorced and at the time that each of them remarried. The records of the probation office disclose that defendant never complied with this order and did not contribute sufficient money to support his children. His contributions, roughly averaging between $2 and $3 per week for both children, were grossly inadequate in these war times.

Relator and her second husband both deny that the two children were "voluntarily" taken into their home. On the contrary, they alleged and testified that the children were not being supported by their father despite the order of this court, and that defendant's own neglect made it absolutely necessary to take these children into the home of the second husband.

The testimony discloses that defendant instituted habeas corpus proceedings to obtain custody of the two children in question, and that this request was denied by the late Judge John M. Broomall, 3rd, after a full hearing, and custody of said children was awarded to the mother, who is the relator in this action.

The testimony also discloses that defendant was in the United States Army from April 4, 1944, to December 2, 1944, and that during that period of time he applied for a family allotment, listing these two children as his dependents; and that the allowance for the two children was actually sent to defendant's second wife,

although she had never had the custody of them. In other words, this defendant was quite willing to claim these children as his dependents when it would be to his financial advantage to do so.

Finally, the testimony discloses that on two different occasions defendant requested that relator's second husband adopt the two children. Both requests were refused.

For a limited purpose, we make, at the request of defendant, the following

### Findings of fact

1. Petitioner, Joseph Iannucci, was the lawful husband of Eva Iannucci, now Eva Giampalmi.

2. On or about May 25, 1938, an order for support of Albert Joseph Iannucci, born November 25, 1931, and Gloria Mae Iannucci, born May 2, 1935, children of these parties, was made by Hon. John M. Broomall, 3rd, and an amended order was entered by the said court on June 13, 1940.

3. The said order required defendant to pay "the sum of ½ earnings weekly for the support and maintenance of the two children, said order not to exceed $12 (twelve dollars) per week".

4. The said Eva Iannucci pleaded guilty to a charge of adultery with one Albert Giampalmi on January 12, 1938, as of no. 299, September sessions, 1938, before Hon. Albert D. MacDade, and was sentenced to pay a fine of $10 and costs and undergo imprisonment of six months to one year.

5. One Albert Giampalmi, as of no. 300, September sessions, 1938, was convicted on a charge of fornication with the said Eva Iannucci, and was sentenced to pay a fine of $100 and costs of prosecution on January 28, 1939, by Hon. Albert D. MacDade.

6. On June 13, 1941, the defendant obtained a final decree in divorce against the said Eva Iannucci, as of

December term, 1939, no. 668, charging the said respondent with adultery with the said Albert Giampalmi.

7. That thereafter, despite the ban of the said divorce decree, the said Eva Iannucci and the said Albert Giampalmi were united in marriage.

Other findings are:

8. Neither immediately after the said marriage, nor at any time, did the said Albert Giampalmi voluntarily accept and receive into his family and as members or part of his family, the said minor children of defendant, Joseph Iannucci.

9. Notwithstanding the said Eva Giampalmi, having been the respondent in a divorce proceeding at the suit of her husband, defendant, on the ground of adultery, and, after divorce granted to the husband, married the paramour under the ban of the law, she is entitled to relief for the support of her and his minor children.

10. The present husband, Albert Giampalmi, has *not* voluntarily taken the said two minor children of defendant, Joseph Iannucci, into his family and does not stand in law or fact in a relation to them of "loco parentis".

### Discussion

These two minor children were awarded to the custody of relator in a habeas corpus proceeding instituted by defendant. She could not continue her custody and control over the children unless she took them with her into the home of the second husband.

Despite the order of this court requiring defendant to pay one half of his earnings weekly, but not in excess of $12 per week, for the support of his two children, defendant never complied with this order. At the time that relator remarried, defendant's payments for the support of his children never averaged in excess of $3 per week. Relator was obliged, by reason of de-

fendant's neglect and stubbornness, to take these children with her into the home of her second husband. Her only alternative was to abandon them and to make them public charges.

Relator's continuous efforts, as disclosed by the records of the probation office, to compel defendant to comply with the order of this court completely negative the thought that relator's second husband had "voluntarily" assumed the burden of their support.

The refusal of relator's second husband to adopt these two children also negatives the thought that he did stand, or desired to stand, "in loco parentis", or that he had made them members of his family.

The case of Commonwealth v. Goodfellow, 71 Pitts. 818, cited by defendant, is a "sport" in the law of Pennsylvania. It has never since been cited nor followed and the reason for this is obvious. Because the child involved was found to be living in the home of the second husband, the court held (p. 818) :

"It must be presumed that the present husband has voluntarily taken the child into his family. He has thus put himself in loco parentis . . . she can not be allowed to capitalize for her own benefit any right of support to which the child may be entitled at the hands of his father."

This is extremely poor reasoning in that it assumes as true that which it set out to prove. First, it assumes that the second husband "voluntarily" took the child in and put himself "in loco parentis" from the mere fact that the child lived in his home. If this be good reasoning and good law, then any negligent father may refuse to support his children and foist the burden of their support upon the first Good Samaritan charitable enough to shelter them under his roof. Second, the court admits that the child is entitled to support from its father but denies this right to the child because the mother may not capitalize upon it for her

own benefit. This could be true only if the order for support were unreasonably high.

In the instant case, this court made an order on March 9, 1945, requiring this defendant to pay $7 per week for the support of each of his two children. This is an average of $1 per day to feed, clothe, educate, and provide amusement for each child. In these war times it is extremely doubtful that relator can adequately provide for the two children under the present order and it would be fantastic to assume that she would have any money left over to "capitalize" for her own benefit.

If the above comment is not enough to condemn the Goodfellow case, supra, the case of Commonwealth ex rel. Stack v. Stack, 141 Pa. Superior Ct. 147 (1940), overrules it. In the Stack case, the facts are similar except that relator obtained the divorce from defendant. Referring to the divorce, the Superior Court said (p. 152):

"That in no way affected the power of the court to compel the father to support the children, nor is his duty and responsibility of maintaining and supporting his minor children altered by the decree in the divorce proceeding . . ."

The Superior Court concludes its opinion by commenting upon relator's second marriage in these words (p. 154):

"When Frame married the mother of these children there was in effect an order of the court requiring the natural father to pay $60 toward their support. *The marriage and Frame's taking the children into his home did not abrogate that order. The natural father's obligation continued.*

"*A stepfather as such is under no obligation to support the children of his spouse by a former marriage. This is especially true if the children have some income. Notwithstanding they may be taken into the step-*

*father's house, there is no presumption that such support is gratuitous on the husband's part:* 46 C. J. §183, p. 1388; 20 R. C. L. §10, p. 594; Estate of McCormick Minors, 18 Phila. Reports 60.

"*The existence of the order of the court at the time of the mother's second marriage and the demanding of the natural father's support negatives the idea that these children were taken by Frame into his home with the intention of assuming all support and maintenance of them.*" (Italics supplied.)

In the instant case, not only was the court order in existence and continued demands made for compliance with it, but there was also the fact that defendant requested the second husband to adopt the children and the fact that custody of the children had been awarded to the mother.

The remaining case cited by defendant in support of his position is that of In re Gross, 17 D. & C. 766. This case is not analogous to the case at bar. The Gross case concerns support for an illegitimate child whose mother subsequently married and then deserted her husband, taking the illegitimate child with her. However, the following language of the court supports the contention of relator rather than that of defendant (p. 767):

"Gross, by his plea of guilty, has admitted the fatherhood of the child, and, in the absence of any proof tending to show that Heverly was placed, either by his own act or otherwise, in loco parentis, there can be no grounds upon which to hold him responsible. Gross remains liable, and his bond is responsible for his faithful performance of the court's order."

It has always been the unquestioned law in Pennsylvania that a father must support his minor child to the best of his ability: Commonwealth v. Cleary, 95 Pa. Superior Ct. 592. The duty of a husband and father to support his children has always been con-

sidered by the State as a paramount obligation. It is not only a moral obligation, but as well a statutory duty, to enforce which the strong arm of the law is permitted to reach out and incarcerate the one who fails to provide for the maintenance of his dependents: Commonwealth ex rel. v. Karn, 91 Pitts. 63.

The information in this case was made by the wife, but not upon her own behalf. This proceeding is for the support of the children and the act provides that the information may be made by the "wife or children, or either of them, or by any other person or persons". Even if she were willing to do so, the wife in this case could not, by her own acts, deprive these children of their right to support from their father: Commonwealth v. Campbell, 128 Pa. Superior Ct. 72.

In conclusion it is felt that some reference should be made to the repeated efforts of defendant in this proceeding to blacken the character and reputation of relator. The testimony in this case taken on March 29, 1945, discloses that the parties herein were divorced on June 13, 1941. The defendant remarried on July 15, 1941, and his first child by that marriage was born about August 15, 1941. Defendant might well take to heart the lesson of the Great Teacher when He said: "He that is without sin among you, let him first cast a stone at her": Gospel of St. John, chap. 8, verse 7.

Defendant's petition to vacate the present support order against him is without merit and should be dismissed.

### Order

And, now, April 10, 1945, defendant's petition and rule thereon to vacate an order of this court made on March 9, 1945, requiring defendant to pay $7 per week for the support of each of his two children, coming on to be heard by the court, together with briefs, after due consideration, the court doth order and decree

1. Defendant's rule upon relator to vacate a court order of March 9, 1945, to support and maintain his two children, as aforesaid, be and is hereby discharged; and

2. Defendant's prayers in his petition to vacate said order be and are dismissed sec. reg. et sec. leg.