## Commonwealth ex rel. Spitalny, Appellant, *v.* Spitalny.

Argued September 25, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Lemuel B. Schofield,* with him *John B. Brumbelow* and *Michael H. Egnal,* for appellant.

*L. Arthur Greenstein,* with him *Daniel S. Greenstein,* for appellee.

OPINION BY DITHRICH, J., November 14, 1950:

The sole question involved in this proceeding is whether appellant, who admittedly left her husband

without reasonable cause, terminated her desertion by returning to his domicile in good faith, thereby becoming entitled to an order for support.

The parties were married January 30, 1947, and lived together thereafter as husband and wife until March 31, 1948. At the time of the separation they were living at 5819 Hoffman Street, Philadelphia, with three minor children of the husband, born of a prior marriage; appellant's daughter, likewise born of a prior marriage; and a daughter born October 6, 1947, of the present marriage. Appellant subsequently filed a petition for support, which was dismissed by order dated November 12, 1948, because she had failed to show that she had reasonable cause for leaving the respondent. The order was not appealed from and became res judicata as to the status and the rights of the parties as of that date. *Commonwealth ex rel. Soprani v. Soprani*, 160 Pa. Superior Ct. 542, 52 A. 2d 234.

From March 31, 1948, to July 1, 1949, appellant resided with her parents at 6416 Sydenham Street, Philadelphia. The infant child, who was not quite six months old when appellant left her husband, remained with him. Following the separation he moved from the Hoffman Street residence to a larger house on Woodbine Avenue. He had to engage a housekeeper to care for the baby, and his mother lived with them and took care of the three older children. Appellant, who had the right of visitation, usually visited the child on Friday of each week, and on Friday, July 1, 1949, without previous arrangement, she entered the home accompanied by her father and brother. She did not have with her any personal effects. She found two suitcases packed with the clothing of her husband's two younger children, who were to spend the summer on a farm, and the luggage of the oldest, a daughter then aged 14, and of the father, who was taking her to Atlantic City for the weekend.

Whether or not appellant knew that her husband and all of his children were leaving home on that date does not appear from the testimony, but it does appear that she knew that he had arranged to send his two younger children to a nearby farm for temporary residence during the summer and that upon her arrival she announced that she was there to stay. Her husband told her that she was welcome but that her father and brother could not stay with her. He and his children then left the house and when he returned the following day, after taking the older of his two daughters to Atlantic City, he found that appellant had changed all the locks on the doors. Before doing so she had forced the housekeeper and her husband's mother out of the house. Her only excuse for changing the locks is the lame one that she didn't have a key and wanted to leave the house to do some shopping.

As stated by the learned judge of the court below, "it is undisputed that the petitioner waited until an occasion when the respondent had sent two of his children away on a summer vacation and without any consultation with the respondent, came to the house with intention to stay. There is no question that she drove the respondent's mother and the housekeeper from the house and moved in her sister and brother-in-law . . . and, later, her mother and father . . . She also removed all the old locks and replaced them with new ones. . . . the conduct of the petitioner in this case is more akin to a hostile invasion than the conduct of one bearing an olive branch."

On October 5, 1949, appellant filed her present petition for support, and after three full and complete hearings held October 21 and 28 and November 18, 1949, the learned judge of the court below dismissed her petition for support for herself and entered an order for payment of $35 a week for the support of the infant daughter. Having had the parties before him

on four separate occasions, beginning in September, 1948, and ending in November, 1949, Judge Bonnelly had ample opportunity to observe their conduct and attitude towards each other; and his conclusion that appellant's offer of reconciliation was not made in good faith is not to be lightly disturbed. "A broad discretion is lodged in the court below on the matter of bona fides and we will not reverse in the absence of manifest abuse of this discretion. 'A judge who sees and hears the witnesses . . . is in better position than we to decide the issue on its merits . . . and our function on appeal, therefore, is merely to determine whether the lower court is chargeable with an abuse of discretion': Commonwealth ex rel. Pinkenson v. Pinkenson, 162 Pa. Superior Ct. 227, 57 A. 2d 720": Commonwealth ex rel. Lubanski v. Lubanski, 165 Pa. Superior Ct. 603, 604, 605, 69 A. 2d 440.

We are all of one mind that there has been no abuse of discretion in this case. The only logical conclusion to be reached is that appellant would under no circumstances live in the same home with her husband and his three children by his former marriage, which was terminated by the death of the mother of his children. Appellant's former marriage was terminated by divorce.

Appellee tested her good faith by telling her July 1, 1949, that she could stay on in the Woodbine Avenue home; but her forcing the mother and housekeeper from the home, changing the locks and having her mother and father and a younger married sister and the latter's husband and two small children move in before the return of appellee on July 2, clearly manifest an intention on her part to live separate and apart from appellee, except on her own terms, which were unreasonable, unnatural and arbitrary. As stated by the court below, "she made it impossible for the respondent to stay with her."

The court throughout the lengthy hearings was extremely patient with her despite her frequent outbursts; but at the final hearing when she interrupted the testimony of a city detective with an unimpeachable record, who had accompanied the father and the daughter when they entered the Woodbine Avenue home for the last time for the purpose of getting their remaining clothing, by saying, "Why don't you tell the truth?" the court said, "I will give you 10 days in the County Prison if you do not keep quiet." We would still find that there had been no abuse of discretion if he had committed her.

Order affirmed.