Commonwealth ex rel. Nicholson *v.* Groff, Appellant.

Argued March 28, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*James N. Lafferty,* for appellant.

*J. Leon Rabben,* for appellee.

OPINION BY ROSS, J., July 19, 1951:

This is an appeal by a father, John Russell Groff, from the refusal of the court below to vacate an order for the support of his minor daughter, Winifred.

On January 29, 1948, appellant's divorced wife obtained an order on him in the Municipal Court of Philadelphia to pay $30 a week for the support of their daughter. On June 23, 1949, the daughter reached the age of 18 years, and on July 21, 1949, appellant filed a petition to have the order vacated. After two hearings the court refused the petition, and this appeal followed.

After the first hearing, the order was continued so that the girl might continue her studies in high school where, at 18, she was then a freshman. She has since left school, however, and counsel for the appellee makes

no claim for support for the purpose of allowing her to continue her education.

Appellant's position is that his daughter is capable of self-support. On the basis of considerable testimony and observation, including records of tests made by psychologists, the court found that although the girl appears normal and healthy, of splendid appearance, and is apparently employable in many branches of industry or of business, she is "unemployable, not because of mental deficiency, but because of her inability to grasp the realities of life".

Since leaving school, she has held various types of positions for short periods of time. Prior to the initial hearing, she was employed for almost four weeks as a typist by the Moreland Manufacturing Company. A representative of the company testified that her work had been satisfactory but that she had been laid off due to slackening down of the work. She worked for the Loyalty Group Insurance Company for two weeks, at the end of which time she was discharged. Another position was with a dry cleaning establishment. Still another was in Chestnut Hill for one day, as to which she testified, "I didn't like it, so the girl they had came back." Between the hearings she worked for Sun Ray Drug Company for approximately three weeks but was asked to leave because she "just didn't do the work as they wanted me to". During this time and for somewhat more than a week afterward, she lived away from home but she became ill and "was sent home". She has since continued to live with her mother. Employment at the Arthur Murray Dance Studio lasted "for about a week". At the second hearing she testified, "I had a lot of jobs promised to me; nothing has happened."

In an effort to have Winifred adjust herself to her situation, the Court and counsel for both parties ar-

ranged for the services of an expert in guidance of adolescents. The effort failed, in that the girl developed no stability in employment of any type.

Ever since the decision in *Com. ex rel. Smith v. Gillmor*, 95 Pa. Superior Ct. 557, it has become established in Pennsylvania that the fact that a minor reaches a certain age is not of itself sufficient to justify revocation of an order for his support. The principle is restated in *Com. v. Gilmore*, 97 Pa. Superior Ct. 303, 304, wherein this Court adopted, per curiam, the opinion of President Judge SCHAEFFER of the court below: ". . . before an order for the support of a minor child who has reached the age of 16 years, may be revoked it must appear from evidence either that said minor is earning in gainful employment a supporting wage, or that he is physically and mentally able to engage in profitable employment and also that employment is actually available for the minor in the community at a supporting wage." See also *Com. v. Campbell*, 128 Pa. Superior Ct. 72, 193 A. 119, cited in *Com. v. Lawson*, 153 Pa. Superior Ct. 446, 34 A. 2d 268.

Appellant had the burden of proving a manifest abuse of discretion on the part of the trial court in continuing the order. As stated by Judge HIRT, speaking for this Court in *Com. ex rel. Pinkenson v. Pinkenson*, 162 Pa. Superior Ct. 227, 228, 57 A. 2d 720; "A judge who sees and hears the witnesses in a case such as this is in better position than we to decide the issue on its merits (Com. ex rel. v. Wm. Goldstein, 105 Pa. Superior Ct. 194, 160 A. 158) and our function on appeal, therefore, is merely to determine whether the lower court is chargeable with an abuse of discretion." Cf. *Com. ex rel. Stack v. Stack*, 141 Pa. Superior Ct. 147, 15 A. 2d 76; *Com. ex rel. Geiger v. Geiger*, 167 Pa. Superior Ct. 26, 27, 74 A. 2d 739, and *Com. ex rel. Spitalny v. Spitalny*, 167 Pa. Superior Ct. 520, 523, 76 A. 2d 489.

Dr. Donald Davidson, neuropsychiatrist for the Municipal Court of Philadelphia, and a *witness for appellant,* who made two examinations of the minor, testified that by a psychometric test in which the average is 100 she scored 87, which was higher than the intelligence quotient found by the psychologist, Dr. Tournay, who also tested her intelligence. As a child the girl attended private schools, some of them of the type which caters to the enrollment of mentally retarded children. Dr. Davidson testified: ". . . the girl has always had a lack of responsibility and a failure to adjust herself wherever she has been. She has been in a good many positions and has always had to leave them for one reason or another. She has had trouble, apparently at home . . . . She is a girl who is little in touch with the realities of life and has no sense of responsibility. She seems to be unable to look seriously upon the future. . . . She will avoid working for self-support. She is in a psychiatric group, a type that fall in the category who don't like to work and there is a lack of desire to hold a job because of the inability to grasp reality." In answer to the question as to whether she was unemployable, he replied, "Yes, not because she is mentally deficient, but she won't work and she has a trait which makes her unemployable because of her inability to grasp the realities of life. She is out of touch with reality of life and because of that she is unable to support herself." Further, "Q. Did you find any mental defect here? A. No. . . . Q. What does she require [to enable her to support herself]? A. A change in her make-up. Q. What do you think would change her make-up? A. I don't think you can change her make-up." The trial judge considered, in view of this testimony by appellant's witness, and in view of the additional fact that the girl's only available home is with her mother, who has no money except as provided by the maternal grandfather, and no other means of

support, that the best interests of society would be served, for the time being at least, by continuing the father's legal obligation to support his daughter. From the record before us, we cannot say that he abused his discretion. We are impressed, rather, with the sincerity of his efforts to find a just solution to this complex problem in human relations.

Our research has disclosed, and we have been cited to, many cases dealing with the duty of a father to support a child who, because of physical or mental deficiency, is unable to support himself, or who, though capable of self-support, wishes to continue his education, but the situation of the duty to support a minor who is sound physically and mentally but otherwise unemployable is one of first impression with us. We have studied the problem carefully from its various angles, and have concluded that, for the present or until psychology shall provide a more acceptable solution, the obligation of the appellant to support his daughter should continue.

Order affirmed.