Strunk Estate.

Argued January 9, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*George B. Balmer,* with him *Aaron A. Brumbach* and *Snyder, Balmer & Kershner,* for appellants.

*Francis J. Gafford,* Deputy Attorney General, with him *Frederick J. Bertolet* and *Robert E. Woodside,* Attorney General, for appellee.

Opinion by Mr. Justice Horace Stern, March 24, 1952:

The testator, in 1935, bequeathed an interest in remainder to children of his adopted child. Was the legacy subject to Pennsylvania transfer inheritance tax at the rate of two per cent or at the rate of ten per cent? From the decision of the court below that the Commonwealth was entitled to the ten per cent tax the legatees appeal.

Our first inheritance tax statute, that of April 7, 1826, P. L. 227, provided that all estates passing by will or under the intestate laws "other than to or for the use of father, mother, husband, wife, children, and lineal descendants born in lawful wedlock", should be subject to a tax at the rate of $2\frac{1}{2}$ per cent on the clear value of such estates. The transfer inheritance tax act presently in force, namely, that of June 20, 1919, P. L. 521, article 1, section 2, provides that "All taxes imposed by this act shall be at the rate of two per centum upon the clear value of the property subject to such tax passing to or for the use of father, mother, husband, wife, children, lineal descendants born in lawful wedlock, legally adopted children, children of a former husband or wife, or the wife or widow of the son, of a person dying seized or possessed thereof, . . . ; and at the rate of five per centum [amended by the Act of May 4, 1921, P. L. 341 to the rate of ten per centum] upon the clear value of the property subject to such tax passing to or for the use of any other person or persons, bodies corporate or politic; . . . ."

Appellants insist that they come within the term "lineal descendants born in lawful wedlock". This contention must be rejected when viewed in the light either of the ordinary meaning of the term "lineal descendants" or the interpretation consistently given to it by previous decisions of our appellate courts.

Standard dictionaries define "descendant" as "one who is descended, *as issue,* lineally from another, however remotely";[1] "one who descends, *as offspring,* however remotely;"[2] "one who 'descends' or is descended from an ancestor; *issue, offspring* (in any degree near or remote).'"[3] The word "lineal" is defined as "of the nature of an *ancestral* line or *lineage",*[1] "in the line of succession through lineage;"[2] while "lineage" is defined as *"ancestral* line of *consanquinity; pedigree;"*[1] "lineal descent from an ancestor; *ancestry, pedigree."*[3] It is obvious that all these definitions involve the inherent concept of *offspring* in the line of generation, that is, descendants who proceed in direct line *by birth* from the ancestor. Therefore a stranger in blood is not a lineal descendant.

While appellants must, of course, concede that the term "lineal descendants" as employed in the earlier acts of assembly must have been understood and intended by the legislature as bearing this generally accepted meaning, they contend that because a subsequent succession of statutes gradually raised the status of adopted children for inheritance purposes to that of natural children the term should be construed, as of the time of decedent's death, to include the children of his adopted child. They point to the fact that even in our first adoption statute, the Act of May 4, 1855, P. L. 430, section 7, it was provided that an adopted child should have all the rights of a child and heir of the adopting parent; that the same provision was contained in the adoption Act of April 4, 1925, P. L. 127, section 4; that in the Act of May 28, 1915, P. L. 580, it was provided that the "said adopting parent and said

---

[1] Funk & Wagnall's New Standard Dictionary, 1947.

[2] Webster's New International Dictionary, second edition, 1936.

[3] Murray's New English Dictionary, 1897.

child shall, respectively, inherit and take by devolution from and through each other personal estate as next of kin, and real estate as heirs in fee simple, or otherwise, under the intestate laws of this Commonwealth, as fully as if the person adopted had been born a lawful child of the adopting parent"; and that the Intestate Act of June 7, 1917, P. L. 429, section 16 (a), contained this same provision and added thereto a clause (b) that "The person adopted shall, for all purposes of inheritance and taking by devolution, be a member of the family of the adopting parent or parents." However, while these statutes progressively enlarged the rights of adopted children to inherit from and through their adopting parent, they could not, of course, actually make such children children of his blood and therefore his "lineal descendants." What they accomplished was to establish a certain relation between the adopted child, the adopting parent, and their respective relatives, for specified purposes, but nowhere therein is there any suggestion of an intention to affect the Commonwealth in regard to its tax legislation. As the Commonwealth properly contends, adoption creates an artificial relation between the adopting parent and the adopted child conferring certain rights and imposing certain duties upon each, but in respect to the Commonwealth's tax laws it is without effect in the absence of express provision to the contrary.

In *Commonwealth v. Nancrede,* 32 Pa. 389, it was held that the Act of May 4, 1855, P. L. 430, section 7, giving to an adopted child all the rights of a child to inherit from the adopting parent, did not exempt it from the payment of the collateral inheritance tax. Chief Justice LOWRIE there said: ". . . we cannot suppose that our law of adoption was intended to change in any respect the law relating to collateral inheritance taxes. It is property devised or descending to children

and lineal descendants that is exempt from the tax. . . . Giving an adopted son a right to inherit does not make him a son in fact. And he is so regarded in law, only to give the right to inherit, and not to change the collateral inheritance tax law. As against that law, he has no higher merit than collateral blood relations of the deceased, and is not at all to be regarded as a son in fact." In *The Commonwealth's Appeal, Avery's Estate,* 34 Pa. 204, 206, the *Nancrede* case was cited with approval; referring to it and other authorities, the court said: "The artificial relation thus created was undoubtedly good as to all but the Commonwealth, but she did not choose to recognize it as equivalent to the natural relation when it conflicted with her claim to revenue. These cases point to the duty of looking to the real relations of the parties in ascertaining who may be subject to the payment of this kind of tax." To the same effect is the case of *Schafer v. Eneu,* 54 Pa. 304, 306, where it was said: "Adopted children are not children of the person by whom they have been adopted, and the Act of Assembly does not attempt the impossibility of making them such. . . . The right to inherit from the adopting parent is made complete, but the identity of the child is not changed. One adopted has the rights of a child without being a child." Other decisions of this and the Superior Court have followed in the same vein: *Tharp v. Commonwealth,* 58 Pa. 500; *Commonwealth v. Ferguson,* 137 Pa. 595, 601, 20 A. 870, 871, ("That a legacy given to an adopted child who stands in the place of an heir would be subject to this tax, is too plain for argument. The reason is that he is not a lineal descendant born in lawful wedlock. He has not the blood."); *Russell's Estate,* 284 Pa. 164, 169, 130 A. 319, 321; *Phillips's Estate,* 17 Pa. Superior Ct. 103, 108-110; *Goldstein v. Hammell,* 49 Pa. Superior Ct. 39, 45, ("Now an adoption does not make the

person adopted a child of the adopter and the act of assembly could not make him such. The person adopted only becomes a child and heir of the persons adopting him as to rights of inheritance and the mutual duties and obligations imposed by law.")

We hold, therefore, that, however extensive were the rights accorded by these statutes to adopted children, appellants did not come within the classification of decedent's "lineal descendants" in the transfer inheritance tax act of 1919.

Decree affirmed; costs to be paid by appellants.

---

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I concur with the majority decision in this case, but with considerable reluctance.

The Adoption Act of April 4, 1925, P. L. 127, as amended by the Act of June 30, 1947, P. L. 1180, section 3, 1 PS 4, declares that an adopted person "shall have all the rights of a child and heir of such adopting parent or parents, and be subject to the duties of such child."

There are no limitations in this grant of right and this imposition of duties. The child shall have ALL the rights of a natural child born of his parents. And one of the rights of a child is to transmit property from his parents to his own children. If the adopted child becomes to all legal intents and purposes the actual child of his adopting parents, then it follows that he becomes the automatic transmitter of benefits from his parents to his children as any father is the link between grandfather and grandchildren.

The Act of May 4, 1855, P. L. 430, as amended, and under which the adoption in this case occurred, declares that the adopted child "shall assume the name of the adopting parent, and have all the rights of a

child and heir of such adopting parent, and be subject to the duties of such child."

The adopted person in this case, Sadie Strunk, was less than three years old when she became by law the "child and heir" of Milton R. Strunk and Kate C. Strunk. Sadie Strunk made her home with her adopting parents not only through her childhood and maidhood, but even after she was married. There can be no question that her children were accepted as grandchildren of Milton R. and Kate C. Strunk. If the adoption proceedings made Sadie a full child of the adopting parents, the bond of kinship should strengthen rather than weaken with the passing of time.

Not only does the statute make an adopted child the unlimited child of the adopting parents but reason and justice support that relationship. An adopted child becomes the legal offspring of its parents as the result of a deliberative process, no less sincere than the conception of a natural child. There is no difference between the responsibility of a parent toward an adopted child and his responsibility toward a natural child. At Roman Law, "adoptions produced the right of succession to the name, the property, and the lares: 'hereditates nominis, pecuniae, sacrorum secutae sunt,' Pro Dom. §13' " (Bouvier's Law Dictionary, 3rd Ed., Vol. I, p. 146.)

I do not believe that anyone would ever have questioned that the children of an adopted child are the full legal grandchildren of the adopting parents, were it not for the Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS 2302, which provides for a 2% tax on property passing "to or for the use of father, mother, husband, wife, children, lineal descendants born in lawful wedlock, legally adopted children, children of a former husband or wife, or the wife or widow of the son, of a person dying seized or possessed thereof. . . ."

This brought the Inheritance Tax Act in direct conflict with the Adoption Act, but it is not our province to nullify any law merely because it contradicts another law. We must and do assume that the Legislature was aware of the conflict and intended the Adoption Act to make an adopted child the full child of his adopting parents in every respect except as to allowing *his* children to benefit from lower inheritance taxes.

Had not the cold, calculating eye of the tax collector fallen on the chance of gaining increased revenues by distinguishing between children of natural parents and children of adoptive parents, the question as to whether the children of an adopted child are grandchildren of the adopting parents would be moot and supererogatory.

As pointed out in the Majority Opinion, the Intestate Act of June 7, 1917, P. L. 429, Section 16 (b) provides that "The person adopted shall, for all purposes of inheritance and taking by devolution, *be a member of the family* of the adopting parent or parents." (Emphasis supplied)

It cannot be doubted that the greatest benefit enjoyed by any parent is that which permits the full sharing in that benefit by his children. And therein lies the incongruity brought about by the conflict between the Adoption and the Inheritance Tax Acts. The Adoption Act engrafts a child to the family tree and permits him to enjoy its beauty, shade and shelter but prohibits him from sharing with his own children the fruit falling into his lap from that same tree.