## Borie Estate

*Myron Jacoby*, of *Jacoby, Donner & Jacoby*, for accountant.

*William A. Houston*, of *Houston & Harbaugh*, for claimant.

*Herman J. Obert*, propria persona, guardian and trustee ad litem.

SHOYER, *J.*, March 18, 1976—M. Clementine Borie died on August 7, 1922, leaving a will and first codicil, both dated June 13, 1922.

By the terms of her will, the principal sum of $500,000, plus the residue of the estate after provision for other specific bequests and payment of decedent's debts, funeral expenses and Federal and State inheritance, transfer and estate taxes, was bequeathed to the Philadelphia Trust Company in trust. Philadelphia Trust Company, by merger, was succeeded by Fidelity-Philadelphia Trust Company, now The Fidelity Bank.

Both the specific bequest to the trustee (under clause fifth), and the bequest to the trustee of the residue (under clause eighteenth), were made pursuant to the same language. Therein, testatrix devised and bequeathed both the aforementioned $500,000, and her residuary estate in trust, and then to pay the income therefrom in equal shares to the lawful sons of her nephew, William W. Buckley, living at the time of her death. Upon the death of any such son leaving *lineal descendants* then liv-

ing, the trustee was authorized to pay over the principal of the share, the income of which such son was entitled to at the time of his death, to such lineal descendants per stirpes. In case such son should die leaving no lineal descendants living, the will stated that there would be no distribution of principal at that time but the entire income should thereafter be paid to his surviving brothers, share and share alike. Should the last survivor of the said son die without leaving any lineal descendants living at the time of his death, then upon the further trust, viz., trustees were authorized to pay the principal remaining to the lineal descendants then living of the said William W. Buckley, per stirpes and not per capita. In default of any such lineal descendants, trustees were to pay the principal to the Contributors to the Pennsylvania Hospital.

William W. Buckley had seven sons: Dorsey A. Buckley who died March 10, 1973, leaving to survive him one daughter, Virginia B. Tatoul; Edward S. Buckley, who is alive with children and grandchildren; Elias F. Buckley, who is living and has one son; Henry W. Buckley, who died October 21, 1952, without issue; Walter White Buckley, who is alive with children and grandchildren; George Douglas Buckley, who died April 16, 1945, without issue; and John Brooke Buckley, whose death on May 29, 1974, without issue, leaving an unadopted stepdaughter, occasions the filing of this account.

At the audit of the second account of The Fidelity Bank, counsel for the accountant properly raised for disposition by this court the question of whether Marjorie Casey Wolff, stepdaughter of John Brooke Buckley, is a lineal descendant of the said John Brooke Buckley and thereby entitled "to receive that share of the corpus or principal of the trust

from which the said John Brooke Buckley had received the income." Accountant has submitted a brief that answers the question in the negative.

Pursuant to a petition filed in this court, Herman J. Obert, Esq., was appointed on January 23, 1975, guardian ad litem for certain minors and trustee ad litem for all unborn or unascertained persons interested in the residuary trust created under the will of M. Clementine Borie. He reviews therein the history of the trust, the relationship of the parties in interest, states his approval of the investment and management of the fund, and also his approval of the counsel fee charged. Mr. Obert states his position with regard to the question presented to this court for adjudication. The guardian and trustee ad litem agrees with the position of the accountant stated above. Mr. Obert's report is accepted.

It has been held in many jurisdictions that the words "lineal descendants" will be construed as connoting blood relationship unless the testator intended a broader meaning. See Appeal of Wildman, 151 Atl. 265, 266 (Conn. 1930); Green v. Hussey, 117 N.E. 798 (Mass. 1917); Bridgeport City Trust Co. v. Buchtenkirk, 124 A. 2d 231, 233 (Conn. 1956).

In construing any portion of a writing, the writer's intent shall always prevail. This intent shall be ascertained by such methods as the circumstances surrounding the making of the documents and the other language in the document. Only if the language in the writing is ambiguous or the writer's intent is for any reason uncertain will it be necessary to resort to the canons of construction: Thomas Estate, 457 Pa. 546, 327 A. 2d 31 (1974); Hamilton Estate, 454 Pa. 495, 312 A. 2d 373 (1973).

Testatrix died on August 7, 1922, less than three

months after executing her will. Testatrix describing the objects of her bounty in her will, uses several descriptive classifications. In article sixth, she bequeaths silverware to the *lawful sons* of her nephew, William W. Buckley. Under article eleventh, she bequeathed $20,000 to Louise Hoyt Allen, and in case she predeceases the testatrix, the said $20,000 shall be divided between *such of her children* as may be alive at the time of her death. Finally, in articles fifth and eighteenth, testatrix bequeathed in trust her residuary estate to the *lineal descendants* then living of a deceased life income beneficiary. In specifying her remaindermen as "lineal descendants," testatrix has not chosen to add stepchildren to the class nor to expressly exclude them. The will was evidently lawyer-drawn and since there is no uncertainty about the phrase "lineal descendants," etymologically or judicially, there was no need for testatrix to say more. Thus, when she specified "the lawful sons of my nephew, William W. Buckley" in articles fifth, sixth and eighteenth, it was unnecessary for her to expressly exclude daughters or illegitimate sons. The words "lawful sons" speak for themselves and require no construction. It was only in days long gone by, when scriveners were paid by the word or by the line, that they found reason to accentuate the positive by expressly excluding the negative.

When in Strunk Estate, 369 Pa. 478, 87 A. 2d 485 (1952), the daughter of an adopted child sought judicial classification as a "lineal descendant born in lawful wedlock" to reduce the inheritance tax rate from five percent to two percent on her share, Chief Justice Stern, writing for a unanimous Supreme Court, said, 369 Pa. at 479-80:

"Appellants insist that they come within the term

'lineal descendants born in lawful wedlock.' This contention must be rejected when viewed in the light either of the ordinary meaning of the term 'lineal descendants' or the interpretation consistently given to it by previous descisions of our appellate courts.

"Standard dictionaries define 'descendant' as 'one who is descended, *as issue*, lineally from another, however remotely';[1] 'one who decends, as *offspring*, however remotely';[2] 'one who "descends" or is descended from an ancestor; *issue, offspring* (in any degree near or remote)'.[3] The word 'lineal' is defined as 'of the nature of an *ancestral* line or *lineage*';[1] 'in the line of succession through lineage;'[2] while 'lineage' is defined as '*ancestral* line of *consanguinity*; *pedigree*;'[1] 'lineal descent from an ancestor; *ancestry, pedigree*.' It is obvious that all these definitions involve the inherent concept of *offspring* in the line of generation, that is, descendants who proceed in direct line *by birth* from the ancestor. Therefore a *stranger in blood* is not a lineal descendant." (Footnotes omitted).

In Commonwealth v. Ferguson, 137 Pa. 595, 601, 20 Atl. 870, 871 (1890), our Supreme Court emphasized the bloodline in excluding an adopted child and said:

"The reason is that he is not a lineal descendant born in lawful wedlock. He has not the blood."

In Royer Estate, 69 D. & C. 508 (1949), President Judge Bowman held that a stepson of testatrix could not qualify as her "child" or "issue" within the meaning of §14.8 of the Wills Act of April 24, 1947, P.L. 89, as amended, 20 P.S. §180.14, so as to prevent a lapse.

Mr. Bregy, in his masterful commentary on the

Intestate, Wills and Estates Acts of 1947, notes as to the shares of others than the surviving spouse, section 3, page 164:

"It has been law since time immemorial that except for the decedent's spouse and except as specially provided by the statute in the case of an adopted child (see section 8), no person can become entitled by intestate succession other than those of decedent's blood.[9] There is nothing in the present section which affects this rule." (Footnote omitted.)

There has been a dearth of cases dealing with the rights of inheritance of stepchildren. Claimant cites the Pennsylvania Inheritance Tax Acts of 1919, Act of June 20, 1919, P.L. 521, as amended, 72 P.S. §§2301, et seq., and 1961, Act of June 15, 1961, P.L. 373, as amended, 72 P.S. §§2485-101, et seq., in support of her contention that she is a lineal descendant of John Brooke Buckley. These acts, respectively, provide that the inheritance tax upon the transfer of property passing to stepchildren shall be at the rate assessed upon transfers to lineals: Butcher's Estate, 267 Pa. 521, 110 Atl. 163 (1920); North Estate, 67 D. & C. 201 (Jefferson County, 1948).

Claimant also cites Commonwealth v. Randall, 225 Pa. 197, 73 Atl. 1109 (1909), the first case to test and uphold the constitutionality of the stepchild classification contained in the Act of April 22, 1905, P.L. 258, as amended, the court said that the legislature had shown no lack of wisdom nor bad faith in classifying stepchildren as lineal descendants, finding that the classification had a basis in the marital and family relationship.

Claimant likewise cites the Workmen's Compensation Act of June 2, 1915, P.L. 736 (No. 338), as amended, 77 P.S. §§541 and 562, section 307(1) and

(9), which provides that the term "child" or "children" includes stepchildren. Her counsel contends this is proof that the public policy of Pennsylvania recognizes that no distinction for inheritance purposes should be made by courts between stepchildren and children of the body, absent express contrary language in the will.

However, the Intestate Acts of June 7, 1917, P.L. 429, as amended, 20 P.S. §§1, et seq., and April 24, 1947, P.L. 80, as amended, 20 P.S. §§1.1, et seq., respectively, do not permit stepchildren to inherit from a deceased stepparent. Moreover, the provisions of the respective inheritance tax acts do not contravene the express provisions of the intestate acts, nor of the Pennsylvania case law dealing with the interpretation of the language of a testator's will for the purpose of ascertaining the intentions of the testator and the objects of his bounty.

This court is aware of the recent decisions by our Supreme Court which have a tendency to broaden the testamentary rights of adopted children: Collins Estate, 393 Pa. 195, 142 A. 2d 178 (1958); Estate of Tafel, 449 Pa. 442, 296 A. 2d 797 (1972); Fownes Trust I, 421 Pa. 476, 220 A. 2d 8 (1966); Fownes Trust II, decided July 5, 1975, Pa. 348 A. 2d 416 (1975); Tower Estate I, 410 Pa. 389, 189 A. 2d 870 (1963); Tower Estate II, 463 Pa. 93, 343 A. 2d 671 (1975). Furthermore, we are cognizant of the provisions of the Act of May 4, 1855, P.L. 430, as amended, 1 P.S. §§1, et seq., which grants an adopted child all the rights of a child and heir of the adoptive parent. However, it is the opinion of the auditing judge that the disposition on the part of the courts to expand the inheritance rights of adopted children is not determinative of the rights of stepchildren. Both our past and present legislation in

this State concerning the devolution of property by intestacy, devise, bequest or gift have contained provisions of some form for the construction of the inheritance rights of adopted children. However, no similar or comparable provision has ever been included for stepchildren. Since the legislature has deemed it necessary to specifically include provisions for adopted children, we can assume that where they have elected to remain silent, their intent is to specifically exclude.

Furthermore, the courts, in construing the inheritance rights of adoptees, have always recognized the parent-child relationship which exists between the adoptee and the adoptive parent. A parent has a duty to support his adopted children. However, there is no such duty imposed by case law or statute on a stepfather to support his stepchildren. See Appeal of Ruckman, 61 Pa. 251 (1869); Commonwealth ex rel. Stack v. Stack, 141 Pa. Superior Ct. 147, 15 A. 2d 76 (1940); Commonwealth ex rel. Travitzky v. Travitzky, 230 Pa. Superior Ct. 435, 326 A. 2d 883 (1974). Where there is no duty or obligation for support, this court finds it very difficult to envision a right of inheritance.

Finally, we refer to article twenty-third of the will which reads as follows:

"In case of any misnomer or uncertainty as to the identity of any beneficiary under my Will, the decision of my Executors or Trustee as to the person or corporation intended shall be final."

The trustee has refused to recognize the identity of Marjorie C. Wolff as a lineal descendant of John Brooke Buckley and that would seem to conclude the matter.

Therefore, the auditing judge finds as a fact and

concludes as a matter of law that the said Marjorie C. Wolff, stepdaughter of John Brooke Buckley, is not a lineal descendant of the said John Brooke Buckley and, therefore, is not entitled to the share of the principal from which John Brooke Buckley was receiving income during his life.

Notice of the contingent bequest to the Contributors to the Pennsylvania Hospital was given to the Attorney General and a copy of the Charitable Gift Clearance Certificate is attached hereto.

There is no Pennsylvania transfer inheritance tax due nor paid since the filing of the previous account by the trustee.

All parties having or claiming any interest in the estate, of whom the accountant has notice or knowledge, have had written notice of the audit by letters mailed December 23, 1974, and October 13, 1975, copies of which are hereto attached.

The account shows a balance of $3,016,057.88 which, composed as indicated in the account, is awarded:

$16,235.71 to Virginia B. Tatoul, daughter of Dorsey A. Buckley who is the son of William A. Buckley; and the balance to The Fidelity Bank, trustee under the will of M. Clementine Borie, Deceased, for the uses and purposes as set forth in paragraphs fifth and eighteenth of testatrix' last will and testament.

The account shows a balance of income of $135,796.60 which, composed as indicated in the account, less any distributions heretofore properly made, plus any income accrued since the filing of the account, is awarded to: Elias Florence Buckley, Edward S. Buckley and Walter W. Buckley, one-third each.

Accountant is hereto authorized to execute all

necessary transfers in accordance with the directives above.

And now, March 18, 1976, the account is confirmed nisi.