**ERIE COUNTY OFFICE OF JUVENILE PROBATION, Appellee,**

v.

**Marlene SCHROECK, Appellant.**

Superior Court of Pennsylvania.

Submitted June 24, 1998.

Filed Dec. 1, 1998.

---

William C. Van Scyoc, Erie, for appellant.

Thomas S. Kubinski, Erie, for appellee.

Before KELLY, JOHNSON, and FORD ELLIOTT, JJ.

KELLY, J.:

Appellant asks us to determine whether the Juvenile Probation office may bring a support action against a parent on behalf of an adult child who is participating in a residential program pursuant to an Order of the Juvenile Court. The order entered on November 20, 1997, in the Erie County Court of Common Pleas directs Appellant, Marlene Schroeck, to pay $209.97 per month for the support of her son, at the rate of $25.00 per week, the balance to be calculated as arrearages. We affirm.

The relevant facts and procedural history are set forth in the trial court's opinions as follows:

Douglas Walker, Jr. (juvenile) was born on January 15, 1979 and turned 18 on January 15, 1997. He graduated from Girard High School in May of 1997.

Prior to his 18th birthday, he was charged with Driving Under the Influence. Because he was a minor, juvenile proceedings

were instituted and a dispositional hearing was held May 22, 1997 following which he was adjudicated delinquent by Judge William R. Cunningham of this Court and committed to the Abraxis Leadership Development Program at Stone Mountain, Pennsylvania for an indefinite period of time. The Order further provided that the placement was deferred on a daily basis with the juvenile being placed on Formal Probation and permitted to reside at home with his parents.

Judge Cunningham's Order of May 22nd provided at paragraphs B and C:

> B. If the deferred placement becomes effective, juvenile's mother, Marlene Schroeck, 9163 Ferndale Court, Girard, PA 16417, and father, Douglas Walker, Sr., address unknown, shall be responsible for any and all medical expenses incurred by juvenile so long as said juvenile, Douglas Walker, Jr., is a cost of the County of Erie, Pennsylvania.
>
> C. If the deferred placement becomes effective, maintenance shall be determined according to the guidelines set forth by the Domestic Relations Office and monies collected by the Domestic Relations Office for Douglas Walker, Jr. shall be forwarded to the Erie County Juvenile Probation Office.

Judge Cunningham's order was not appealed.

Subsequently, the juvenile assertedly violated the terms of his probation and on June 27, 1997, a Detention/Modification Hearing was held following which his probation was terminated and the commitment to Abraxis was implemented. The Court's Order further directed that:

> D. Juvenile's mother, Marlene Schroeck, 9163 Ferndale Court, Girard, PA 16417, and father, Douglas Walker, Sr., address unknown, shall be responsible for any and all medical expenses incurred by juvenile so long as said juvenile, Douglas Walker, Jr., is a cost of the County of Erie, Pennsylvania.
>
> E. Maintenance shall be determined according to the guidelines set forth by the Domestic Relations Office and monies collected by the Domestic Relations Office for Douglas Walker, Jr., shall be forwarded to the Erie County Juvenile Probation Office.

Judge Cunningham's Order of June 27th was not appealed.

Medical reasons required that the juvenile remain in the home of his mother until August 26, 1997 when he was transported to Abraxis. On that date, the Office of Juvenile Probation filed a Petition against Ms. Schroeck seeking maintenance fees for her son in the grid amount. The actual maintenance cost for Abraxis is $121.74 per day.

(Trial Court Opinion, dated November 18, 1997, at 1–3).

> Following a support conference, the Court entered a Temporary Order on October 8, 1997, effective October 1, 1997, setting arrearages between August 26, 1997 and October 1, 1997 at $291.49 and directing Ms. Schroeck to pay $209.97 to the Erie County Office of Juvenile Probation as support/maintenance plus an additional $21.67 per month on the arrearages. A wage attachment was entered in the amount of $53.45 per week.
>
> Ms. Schroeck subsequently filed a timely demand for a *de novo* hearing and requested a stay of the Order pending argument on the standing of the Juvenile Probation Office to bring the subject Complaint in view of the fact that Douglas Walker, Jr. had attained his 18th birthday after the commission of the offense for which he was adjudicated and before the filing of the petition. By Opinion dated November 18, 1997, we determined that the support action was appropriately filed and took testimony on Ms. Schroeck's *de novo* exceptions to the amount of the Order.

(Trial Court Opinion, dated November 20, 1997 at 1–2). Following the hearing, the trial court modified Appellant's weekly support payment to $25.00 per week but otherwise confirmed the recommendation of the hearing officer. Appellant filed a timely appeal on December 22, 1997.

On appeal, Appellant presents the following issues for our review:

I. WHETHER A SUPPORT ORDER CAN BE ENTERED AGAINST THE PARENT OF A CHILD WHO IS ADJUDICATED DELINQUENT BY THE JUVENILE COURT AND COMMITTED TO A RESIDENTIAL FACILITY WHEN THE CHILD IS BEYOND THE AGE OF EIGHTEEN (18) AND HAS GRADUATED FROM HIGH SCHOOL. II. WHETHER THE SUPPORT GUIDELINES ARE APPLICABLE TO AN ACTION FOR SUPPORT WHEN THE PERSON FOR WHOM SUPPORT IS REQUESTED IS BOTH OVER THE AGE OF EIGHTEEN (18) AND HAS GRADUATED FROM HIGH SCHOOL.

(Appellant's Brief at 3).

■■■ At the outset we note that our scope of review is well settled. Absent a clear abuse of discretion, an appellate court will not disturb a properly entered support order. *Kessler v. Helmick*, 449 Pa.Super. 113, 672 A.2d 1380, 1382 (Pa.Super.1996)(quoting *Griffin v. Griffin*, 384 Pa.Super. 188, 558 A.2d 75, 77 (Pa.Super.1989)); *Rudick v. Rudick*, 441 Pa.Super. 558, 657 A.2d 1307, 1309 (Pa.Super.1995) (quoting *Oeler By Gross v. Oeler*, 527 Pa. 532, 537, 594 A.2d 649, 651 (1991)); *Lampa v. Lampa*, 371 Pa.Super. 1, 537 A.2d 350, 352 (Pa.Super.1988). A court abuses its discretion not merely by making an error in judgment, but also "if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Zullo v. Zullo*, 531 Pa. 377, 380, 613 A.2d 544, 545 (1992)(quotation omitted); *Thomson v. Rose*, 698 A.2d 1321, 1322–23 (Pa.Super.1997)(citing *Kelly v. Kelly*, 430 Pa.Super. 31, 633 A.2d 218, 219 (Pa.Super.1993)); *Rudick, supra.*

In her first issue, Appellant asserts that the trial court erred when it held her responsible for the support of her son during his commitment at Abraxis because at the time he was committed, he was over the age of eighteen and had graduated from high school. We disagree.

In response to this argument, the trial court set forth its analysis as follows:

The law on this subject is an admixture of the Juvenile Act, the Public Welfare Code and the Support Law and requires an analysis of the intermixture of the applicable provisions of each.

The Support Law states that "Parents may be liable for the support of their children who are 18 years of age or older." 23 Pa.C.S.A. §4321(3).

The Juvenile Act defines "child" as "(a)n individual who ... (2)is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years...." 42 Pa.C.S.A. §6302. The Act then directs that "(t)he costs and expenses of the care of the child shall be paid as provided by Sections 704.1 and 704.2 of the Act of June 13, 1967 (P.L. 31, No. 21), known as the 'Public Welfare Code.' " 42 Pa.C.S.A. §6306.

Section 704.1(e) of the Public Welfare Code provides:

> If, after due notice to the parents or other persons legally obligated to care for and support the child, and after affording them the opportunity to be heard, the [c]ourt finds that they are financially able to pay all or part of the costs and expenses stated in [s]ubsection (a), the [c]ourt may order them to pay the same and prescribe the manner of payment. Unless otherwise ordered, payment shall be made to the [c]lerk of the [c]ourt for remittance to the person to whom compensation is due, or if the costs and expenses have been paid by the [c]ounty, to the appropriate officer of the [c]ounty.

62 P.S. §704.1(e).

(Trial Court Opinion, dated November 18, 1997, at 3–4)(footnote omitted).

In a similar case before the Adams County Court of Common Pleas, the trial court considered the identical question raised instantly by Appellant: whether a support action may be maintained against a parent by the Juvenile Probation Office on behalf of an adult child who is participating in a residential program pursuant to an order of the Juvenile Court. *See Adams County Probation Office*

v. *DeSilva,* 5 D. & C.4th 183, 187–89 (1990). The *DeSilva* court reasoned as follows:

> The Rules of Civil Procedure designate the framework within which to bring "all civil actions or proceedings" to "enforce a duty of support." Pa.R.C.P.1910.1(a). Duties of support arise under several authorities including, inter alia, Act 66, and The Support Law of 1937, 62 P.S. §1971, *et seq.* The Juvenile Act is another statutory authority designating support obligations. That act specifically provides:

>> The cost and expense of the care of the child shall be paid as provided by sections 704.1 and 704.2 of the Act of June 13, 1967,(P.L. 31, no. 21), known as the Public Welfare Code.

> 42 Pa.C.S. §6306.

> \*       \*       \*

> A "child" is defined in the Juvenile Act to include an individual who is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years. . . .

> The term "parents or other persons legally obligated to care for and support the child" in section 704.1(e) of the Welfare Code is not defined. It is our opinion, however, that the section 704.1(e) creates two classes of persons from whom reimbursement for support may be maintained: (1)parents and (2)other persons legally obligated to care for and support the child. We reach this conclusion by applying relevant provisions of the Statutory Construction Act, 1 Pa.C.S. §1909 *et seq.* The main object in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. §1921(a). In ascertaining that intention we may consider various factors including, *inter alia,* the mischief to be remedied, the object to be attained, the consequences of a particular interpretation, 1 Pa.C.S. §1921(c), and that the legislature intends to favor public interest as against any private interest, 1 Pa.C.S. §1922(5).

> The Juvenile Act and the Welfare Code clearly demonstrate an intent to seek some reimbursement for the cost of care and support for children who commit delinquent acts while a minor and who are subsequently placed in residential facilities. The legislature may be willing to initially pay for these services but makes certain that the public will not bear the entire burden of the cost when parents have the ability to share therein. The right of government to seek reimbursement for services provided differs substantially from the child's individual right to receive support.from a parent. In the former situation we choose not to engage in ascertaining whether the child has attained majority and whether he can overcome the presumption that he is no longer entitled to support. In the latter situation we must engage in that analysis. Therefore, we interpret the statute as creating the two classes of obligors and do not limit "parents" to those "legally obligated to care for and support the child." Imposition of that limitation would force the court to engage in an analysis which may favor private interests over public interests if, for example, the parent could show that the adult child had shunned the parent-child relationship. *DeWalt v. DeWalt,* 356 [365] Pa.Super. 280, 288, 529 A.2d 508, 512 (1987). Instead, we must recall that the delinquent act of the child which results in placement occurred when the child was a minor and the parent's obligation to support that child was well-nigh absolute. *Sutliff v. Sutliff,* 339 Pa.Super. 523, 538, 489 A.2d 764, 771 (1985), *aff'd.* 515 Pa. 393, 528 A.2d 1318 (1987).

> However, even if we had to consider the parent's obligation under the general support law we would reach the same conclusion, if the Juvenile Probation Department could establish that the conditions of the residential program make the child unemployable while participating therein. Parents may be required to support children over the age of 18 years, 23 Pa.C.S. §4321, if they are unemployable. A "delinquent child" is one who, by definition is in need of treatment, supervision or rehabilitation. 42 Pa.C.S. §6302. The term "unemployable" is intended to mean that the child is not capable of being self-supporting whether on a temporary or a permanent basis and whether or not such limitation is

caused by mental or physical disabilities. *Commonwealth ex rel. Nicholson v. Groff*, 169 Pa.Super. 12, 82 A.2d 536 (1951).

We noted above that the scope of the Rules of Civil Procedure, 1910.1 *et seq.* apply to all civil actions for support. We have concluded that the legislature clearly established a statutory action for "cost of care and support" of a child placed in a residential setting pursuant to the Juvenile Act. Thus, pursuant to the rules and the statute an action can be filed, as was done here, against the parent.

Furthermore, Pa.R.C.P.1910.3 provides that an action shall be brought:

> (3) by a public body or public or private agency having an interest in the care, maintenance or assistance of a person to whom a duty of support is owing.

Adams County Juvenile Probation qualifies as a public agency having the requisite interest in the subject children.

At any hearing it becomes incumbent upon the Juvenile Probation Department to establish (1) adjudication, (2) disposition to a residential facility, (3) the costs provided for the child by the Welfare Department pursuant to section 704.1(a), and (4) that defendants are parents or other persons legally obligated to support the child.

*Adams County Probation Office, supra* at 187–89 (1990).

■ Because the *DeSilva* case is factually on all fours with the instant case, we adopt its reasoning as or own. We add only that Appellant's son is under the age of twenty-one years and his act of delinquency, driving under the influence, was committed prior to his eighteenth birthday. Therefore, he is a "child" as defined by 42 Pa.C.S.A. §6302. Despite the fact that the son's eighteenth birthday was more than four months before his delinquency adjudication and commitment to Abraxis for an indefinite period of time, he most certainly was a "child," as a matter of law, at the time he committed the delinquent act. Further, his commitment to Abraxis makes son unemployable while participating in the program. Thus, under the general support law, the son's parents have a duty to support him because he is unemployable and incapable of self-support. Therefore, pursuant to the Welfare Code, Appellant has a duty to contribute to her son's support while he is in residence at Abraxis.

In her second issue, Appellant challenges the trial court's use of the support guidelines to determine an appropriate support amount. Appellant asserts that the trial court erred when it failed to consider her ability to pay part of her child's maintenance at Abraxis. Appellant concludes that a remand for recalculation of her support obligation is in order. We disagree.

Rule 1910.16–1 states, in pertinent part: "If it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded." Pa.R.C.P.1910.16–1(b). Further, if the amount of support deviates from the amount of support determined by the grids found at Pa.R.C.P.1910.16–2, the trier of fact is required to specify, in writing, the guidelines amount and the reasons for the deviation. Pa.R.C.P.1910.16–4.

In the instant case, a support conference was held on October 8, 1997. The hearing officer found that Appellant had a disposable monthly income of $1,097.89 and the grid amount was $247.02. Due to Appellant's husband's temporary incapacity and impending surgery, the hearing officer recommended a fifteen percent downward deviation from the guidelines' amount. Thus, the hearing officer recommended that Appellant be ordered to pay $209.97 per month, and that payments be made at the rate of $53.45 weekly. The hearing officer's recommendation was reduced to writing. The trial court entered a temporary order, confirming the hearing officer's recommendations. Following a *de novo* hearing on Appellant's exceptions on November 17, 1997, the trial court approved the hearing officer's recommendation as to the grid amount of monthly support with the fifteen (15%) percent deviation. However, rather than $53.45 per week, the trial court ordered Appellant to pay $25.00 per week with the balance to be applied and added to the arrearages accumulating since

August 27, 1997. The trial court offered the following explanation for this alteration:

> Although granted a downward deviation of 15 percent by our Order of October 8, 1997, because [Appellant's] husband is temporarily incapacitated and because she is thereby responsible for all of the household expenses, [Appellant] requests an additional downward deviation. In support of her request, she has submitted an Income and Expense Statement (Exhibit 1) which reflects that the total income of the household is $2,731.89 while the asserted expenses total $2,801 before deduction of the ordered amount of support.
>
> Downward deviations are to be granted when there are exceptional circumstances. In reviewing the submitted expenses we cannot but note that they include a loan and credit card charges that alone total $261—more than the specified amount of support and the arrearage payment. Since the obligation of support must take priority over other financial obligations, we have no bases for an additional downward deviation.
>
> Nevertheless, because it is possible that [Appellant's] obligation of support may be reduced by reason of future contributions to the total amount due by the child's father, we will reduce the amount of the wage attachment to $25 per week with the resulting monthly unpaid balance being assessed to arrearages. [Appellant] has advised the Court that it is anticipated that her son will be released from Abraxis and returned to her on or about December 9, 1997. At such time as her son is returned to her custody, and upon notification by [Appellant] to the Domestic Relations Section of that changed circumstance, verified by the Office of Juvenile Probation, the obligation of support will be suspended with the wage attachment continuing thereafter until the arrearages are paid in full.

(Trial Court Opinion, dated November 20, 1997, at 3–4).

Pursuant to the above analysis, we hold that Appellant had an obligation to pay support for her son while he was in residence at Abraxis, and that a County Juvenile Probation Department qualifies under the applicable rules as a public agency with the requisite interest to bring an action for child support. Further, the trial court correctly decided on an appropriate amount of support by consulting the support guidelines. Pa. R.C.P.1910.16–1(b). Finally, the trial court properly approved the recommendation of the hearing officer as to a downward deviation and appropriately reduced the amount of Appellant's weekly support payment. Accordingly, we affirm the November 20, 1997 support order.

Order affirmed.