J-A18010-19

2020 PA Super 48

| MCKEAN COUNTY JUVENILE PROBATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIELLE NEWMAN | : | |
| | : | |
| Appellant | : | No. 1303 WDA 2018 |

Appeal from the Order August 10, 2018
in the Court of Common Pleas of McKean County
Domestic Relations at No(s):  128 DR 2017

| MCKEAN COUNTY JUVENILE PROBATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRIN NEWMAN | : | |
| | : | |
| Appellant | : | No. 1304 WDA 2018 |

Appeal from the Order August 10, 2018
in the Court of Common Pleas of McKean County
Domestic Relations at No(s):  No. 164 DR 2017

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

OPINION BY BOWES, J.:                    **FILED MARCH 04, 2020**

Danielle and Darrin Newman (collectively "the Newmans") appeal from

the August 10, 2018 orders[1] that dismissed their exceptions to support

_____

[1] The orders are dated August 8, 2018, but were not filed until August 10, 2018.  We have amended the captions accordingly.

recommendations without a hearing, and adopted the recommendations as support orders. We vacate and remand with instructions.

The Newmans adopted T.N., who was born in October 1999, when he was a teenager. In September 2017, T.N. was placed in a secure youth development center upon an adjudication of delinquency. Before T.N.'s placement concluded, the McKean County Juvenile Probation Department ("the Department") filed complaints in support against Ms. and Mr. Newman. Consequently, the Newmans appeared *pro se* before a hearing officer on October 30, 2017.

At the hearing, the Department indicated its net cost for T.N.'s placement was $230.80 per day, and his anticipated discharge date was April 1, 2018.[2] N.T. Support Hearing, 10/30/17, at 5. The Department sought reimbursement from the Newmans of the full amount of the costs of the entire anticipated stay, less funds of approximately $1,000 per month that the county would receive directly from Social Security. *Id*. at 6.

The hearing officer questioned the Newmans to determine their respective incomes. The Newmans explained that they are an intact family and reside together, although Mr. Newman also has a residence in New York and files a separate head-of-household tax return. *Id*. at 17-18. Mr. Newman

_____

[2] The total expense was $577 per day; however, the Commonwealth reimbursed the county 60% of the cost of placement. N.T. Support Hearing, 10/30/17, at 5.

- 2 -

testified that he earns $33 per hour working approximately forty hours per week. *Id*. at 16. Ms. Newman testified regarding her earnings at multiple jobs outside of the home: $2,520 for each of her three classes per semester as an adjunct professor at the University of Pittsburgh at Bradford; $10.50 per hour as a restaurant cook five to fifteen hours per week; and $2,760 for a six-week contract as a summer school teacher. *Id*. at 9-13. Ms. Newman provides financial assistance for her two other children who are college students, and cares for her twenty-one-year-old autistic brother. *See id*. at 14-15.

After eliciting evidence from the parties, the hearing officer explained the process she would apply to the Newmans. Specifically, she informed them that she would calculate their respective monthly support payment amounts pursuant to the guidelines; that the amount of money requested by the Department would be their support obligation and would be entered as arrears; and that the Newmans would "monthly, chip away at" the arrears. *Id*. at 22. The hearing officer indicated that the monthly payment amount reflects that they "try really hard not to make it challenging for people." *Id*. at 31. Mr. Newman interjected that it was already a bit challenging for them because Ms. Newman cut her income in half by giving up a job in order to adopt and take care of T.N., and that they thought they could afford it because they would receive the Social Security payments that ceased when T.N. was put into placement. *Id*. Before the hearing concluded, the Department

indicated its willingness to forgo wage attachment so long as the Newmans did not fall behind in payments. *Id*. at 40.

The hearing officer filed findings of fact and recommendations as to each of the Newmans on November 21, 2017. Therein, the hearing officer found Mr. Newman's monthly support payments to be $917 under the guideline calculations, and Ms. Newman's to be $441. Since the Department was going to seek T.N.'s Social Security benefits for the time of his placement, she "recommended that the out of pocket placement costs be reduced by $7,175 so that only $40,139 is owed." Findings of Fact, 11/21/17, at 4. The hearing officer suggested splitting the amount 70-30 between Mr. and Ms. Newman, such that arrears in the amounts of $28,097.30 and $12,041.70 be entered, to be paid at the respective rates of $700 and $350 per month until paid in full.[3]

The Newmans filed timely *pro se* exceptions raising similar complaints. Specifically, both of the Newmans took issue with the fact that the total

_____

[3] As the Department was amenable, the hearing officer also indicated that the "arrears payment shall not be wage attached unless the Defendant is 60 days or more behind in payment of it." Findings of Fact, 11/21/17, at 4. Notwithstanding the Department's agreement and hearing officer's recommendation, orders were entered on December 5, 2017, attaching Mr. Newman's wages and Ms. Newman's unemployment compensation benefits. While the withholding of Mr. Newman's wages was corrected two weeks later, subsequent orders attaching sources of income for Ms. Newman were entered. It was not until March 8, 2018, that the trial court entered an order suspending support garnishment.

amounts were entered as arrears although they included months of anticipated placement costs that had not yet occurred, that the recommendation failed to consider the family's other dependents, and that they lacked the ability to pay the recommended amount. **See** Exceptions, 12/11/17.[4] Both parents also argued that holding them responsible for 100% of the county's placement costs was inequitable under the circumstances, as T.N. had been in their home for only a few years, while the behaviors that led to T.N.'s placement "are a known result of his improper care and being in the system as a ward of the state for over half his life" prior to the Newmans' involvement. Exceptions (Ms. Newman), 12/11/17. **See also** Exceptions (Mr. Newman), 12/11/17, at unnumbered 1-2 (acknowledging that the Department had a right to seek reimbursement, but suggesting that the individual circumstances be taken into account; also noting the chilling effect the ruling would have on the adoption of children with behavioral issues).

The trial court scheduled argument for February 20, 2018, on the Newmans' exceptions, for which they appeared with Tyler Lindquist, Esquire as their counsel.[5] The court began by indicating that it would refer the issue

---

[4] Although there are separate cases for each parent, many of the documents we cite were filed separately at each docket number but are substantially interchangeable. Accordingly, we shall not provide dual citations or designate to which docket's filing we refer unless the distinction is of some import.

[5] Attorney Lindquist did not file entries of appearance in the Newmans' cases until April 26, 2018.

about the setting of anticipated support as arrears back to the hearing officer. It reasoned that, because T.N.'s discharge date was set, a final, non-speculative number could be calculated. *See* N.T. Hearing, 2/20/18, at 3-4. The court then indicated that it would address the rest of their exceptions, and proceeded to directly question each of the Newmans after placing them under oath. *See id*. at 4-10.

The court inquired whether Attorney Lindquist wished to elicit any additional testimony from the Newmans, and he indicated that he did not. *Id*. at 10. Instead, the Newmans themselves engaged in a discussion of their grievances with the trial court, including the effects that the arrears designation had upon their finances, the fact that they continued to be responsible for supporting T.N. for the period after he turned eighteen and obtained his GED, and that they were being required to pay $40,000 for less than a year of placement – half of their annual income – when they would not have had to expend nearly that much to support him themselves. *Id*. at 13-17, 21-23.

In addressing the Newmans' concerns, the trial court at times focused upon the fact that this is not a typical child support action, but rather reimbursement under Department of Public Welfare regulations of which it had no working knowledge. *See*, *e.g.*, *id*. at 14. In other instances, the trial court expressed that its discretion was limited by the strictures of the child support guidelines, which it viewed as working a hardship on people in rural

areas. *See id*. at 19-21. The court indicated that the hearing officer could deviate from the guideline amounts for the mileage Mr. Newman had to travel for work, and invited the Newmans to do research on whether similar deviations were allowable as to their other issues such as their adult dependents. *Id*. at 18. The court expressed its belief that the hearing officer should exercise her discretion where she was able to reduce the Newmans' obligations, but stated: "I don't know what discretion she has with regards to these other matters. She may have some discretion regarding these as well. I don't know . . . ." *Id*.

To the Newmans' complaint about the sheer size of the repayment obligation, the court responded "the problem is that you're dealing with placement cost here." *Id*. at 23. The court seemed to agree with the Newmans that having to reimburse the total amount of the Department's costs was unfair:

> THE COURT: Yeah, if you were living on public assistance you wouldn't be paying any of this, right?
>
> . . . .
>
> Of course, you get penalized because you happen to be two . . . working people . . . and you get penalized for it, where someone who -- the majority of our cases around here, neither mom nor dad work, and so the state picks up the tab, and mom and dad don't pay anything.
>
> MR. NEWMAN: Right. Which is wrong, and it's totally backwards --
>
> THE COURT: Yeah, that's the system, unfortunately.

MR. NEWMAN: . . . We didn't raise him from the ground up. We had him for the last 2.8 years. I did some calculations.

THE COURT: I understand. I understand it's --

MR. NEWMAN: It's 15 percent of his life.

THE COURT: It comes down to the question as to how far we can deviate from the guidelines and get away with it, right?

MR. NEWMAN: I understand. I just would appreciate if you could do what you can.

. . . .

THE COURT: We'll look into it and see what we can do to help you out here.

MR. NEWMAN: Thanks.

THE COURT: I understand your circumstances.

MR. NEWMAN: And we want to be able to help [T.N.] out, too, so if we get drained from this, we're not going to be able to help him.

THE COURT: Understood. . . .

*Id*. at 24-25 (unnecessary capitalization omitted).

The trial court resolved the Newmans' exceptions by orders of March 8, 2018. Therein, the court, *inter alia*, dismissed exceptions that it characterized as claims that they "should owe no duty of support because the child is adopted[,]"[6] "should owe no duty of support because the child is in placement

---

[6] As is readily discernable from our discussion above, the Newmans did **not** contend that they owed no support because T.N. is their adopted child; rather, they argued that the fact that the behaviors that resulted in the placement

involuntarily[,]" and have "other dependents at home[.]"[7] Order (Ms. Newman), 3/8/18, at ¶¶ 2-4. However, it remanded the matter to the hearing officer for her to consider the issues of the actual cost of the placement, whether parents owe a duty of support for children over the age of eighteen who have a high school degree or its equivalent, and any other issue the hearing officer "deems fit to determine a proper support calculation, including but not limited to recalculation of [the Newmans'] income." *Id*. at ¶ 5. The trial court also instructed the Newmans' counsel to provide "a legal memorandum and brief in support of [the] exceptions that have been remanded," in particular the issue concerning the fact that T.N. had turned eighteen and obtained his GED. Order (Mr. Newman), 3/8/18, at ¶ 6.

A hearing was scheduled as directed by the trial court for April 26, 2018. However, the hearing was continued because the Newmans and Attorney Lindquist appeared without the legal memorandum and brief ordered by the

_____

predated their involvement in his life militated against requiring them to pay 100% of the county's placement costs. *See*, *e.g.*, Exceptions (Ms. Newman), 12/11/17 (suggesting that holding the Newmans responsible for 100% of the placement costs was inequitable under the circumstances, as the behaviors that led to T.N.'s placement "are a known result of his improper care and being in the system as a ward of the state for over half his life" prior to the Newmans' involvement with him).

[7] The court indicated that the Newmans had no legal duty to support the other dependents. However, it indicated that, on remand, the hearing officer could consider it if she believed it to be a factor relevant "for deviation purposes." Order (Ms. Newman), 3/8/18, at ¶ 4.

trial court. *See* Recommendation, 5/4/18, at 1. The hearing officer researched the one issue identified with specificity in the trial court's remand order (regarding the implications of T.N. reaching majority and obtaining his GED while in placement), and concluded that the issue warranted no relief.[8] *See id*. Noting that T.N.'s release date had been confirmed as being March 27, 2018 (four days earlier than anticipated at the initial hearing), the hearing officer opined that the costs could be reassessed without additional evidence and there was no need to reschedule the remand proceeding unless Attorney Lindquist in writing either submitted contrary legal authority or requested a hearing for another reason, by May 25, 2018. *See id*. Attorney Lindquist made no such filing.

Before the May 25, 2018 deadline passed, the Newmans attempted to file, *pro se*, documents indicating that Attorney Lindquist was no longer responding to their attempts to contact him, and requesting additional time to find "reliable representation."[9] Praecipe to Correct Docket Filings, 9/12/18,

---

[8] The hearing officer's determination was based upon this Court's decision in *Erie Cty. Office of Juvenile Prob. v. Schroeck*, 721 A.2d 799, 803 (Pa.Super. 1998), in which we held that a child gaining majority had different effects upon the government's right to seek reimbursement for services provided than it did on a parent's duty to support the child. The Newmans do not challenge the correctness of the hearing officer's legal conclusion on this issue.

[9] The Newmans also requested the cessation of the designation of arrears as delinquent, holds on passports, negative reports to credit agencies, and income tax offsets. Praecipe to Correct Docket Filings, 9/12/18, at Exhibit A.

at Exhibit A. The documents were returned to the Newmans on May 31, 2018, with a letter explaining that, because their records indicated they were represented by counsel, the office was "only able to accept documents filed by [the Newmans'] attorney." *Id*. They promptly retained new counsel, who attempted to file an entry of appearance and a *nunc pro tunc* exceptions brief. By letter of June 8, 2018, those documents were returned to counsel without being filed with the explanation that "[t]he policy of the McKean County Domestic Relations Office is and has been that if there is an attorney of record in a case, another attorney cannot enter their appearance until the prior counsel has either withdrawn or there has been a Substitution of Appearance filed." *Id*. at Exhibit F. On June 15, 2018, the Newmans successfully filed documents to remove Attorney Linquist and add present counsel as counsel of record. Through their new counsel, the Newmans filed motions requesting leave to file *nunc pro tunc* the legal brief that Attorney Lindquist was supposed to have filed by May 25, and requesting a hearing for consideration of the *nunc pro tunc* filing.

In the meantime, unaware of these attempted filings, the hearing officer entered new recommendations on June 11, 2018. The new recommendations set the total costs of placement at $38,985. *See* Recommendation, 6/11/18, at 1. The hearing officer, applying the prior income calculations and 70-30 division of support, suggested that $27,298.50, minus prior payments made, should be entered as arrears for Mr. Newman, and that he make payments of

$375 per month until the arrears were paid in full. Recommendation (Mr. Newman), 6/11/18, at 1. Ms. Newman was recommended to pay $125 per month towards arrears of $11,695.50, with credit for prior payments. Recommendation (Ms. Newman), 6/11/18, at 1. Again, both parents' arrears were made subject to immediate attachment.

On July 2, 2018, the Newmans, through their new counsel, filed timely exceptions to the June 11, 2018 recommendations.[10] Therein, the Newmans, *inter alia*, challenged the rejection of their prior filings and contended that the hearing officer failed to (1) recognize that the applicable law did not give the Department an automatic right to recover all of the costs of T.N.'s placement; (2) acknowledge that she had discretion to award less or none of the requested amount; or (3) make a determination as to the Newmans' ability to pay after taking evidence of their other obligations. **See** Exceptions, 7/2/18, at ¶¶ 1, 4-6. The Newmans further took exception to the hearing officer's calculation method and resulting amount, as well as failing "to consider alternatives to the designation of amounts due as arrears." **Id.** at ¶ 3. The Newmans concluded with a request for a full hearing to address the issues.

---

[10] Pursuant to Pa.R.C.P. 1910.12(f), exceptions are to be filed within twenty days of the date that the hearing officer's recommendation was mailed or received, whichever is earlier. Twenty days after the mailing of the recommendation was Sunday, July 1, 2018, and there is nothing in the record to indicate that an earlier date is applicable. Hence, the Newmans' July 2, 2018 exceptions were timely filed. **See** Pa.R.C.P. 106(b) (providing that the last day of a computation period is omitted if it falls on a weekend or legal holiday).

On August 10, 2018, the trial court entered the order at issue in this appeal without a hearing. Therein, the trial court reaffirmed the denial of the exception related to the Newmans' being adoptive parents, again misstating it as a claim that adoptive parents should owe no duty of support, rather than the actual contention that the circumstances of T.N.'s joining their family, and the public policy in favor of encouraging the adoption of troubled youths, weighed against holding them responsible for the full amount of the Department's costs. *See* Order, 8/10/18, at ¶ 1. The court similarly rejected what it construed to be the Newmans' belief that they owed no duty of support because T.N.'s placement was involuntary. *Id*. at ¶ 2. Next, the court determined that the Newmans' assertion that the hearing officer failed to consider their ability to pay was

> wholly inaccurate, as the [hearing officer] held a hearing to determine [the Newmans'] income, found that [they] were above the self-support reserve, had the ability to pay [their] duty of child support, and the [hearing officer] calculated the amount of support based upon the costs of placement as permitted by the applicable Rules of Civil Procedure and case law.

*Id*. at ¶ 3 (citing the procedural rules pertaining to child support and ***Bradford Cty. Children & Youth Servs. v. Powell***, 889 A.2d 1235 (Pa.Super. 2005)). Concluding that further argument would be "a waste of judicial resources and [the Newmans'] legal fees and costs to reargue points that are simply incongruous with the applicable law[,]" the trial court denied their request for a hearing on the exceptions. *Id*. at ¶ 4. Finally, the order

- 13 -

provided that the hearing officer's June 11, 2018 recommendation was adopted as an order of court. *Id*. at ¶ 5.

The Newmans filed timely notices of appeal. They also filed in their respective cases *praecipes* "to correct docket entries and to index filings," seeking to make part of the record the attached documents which had been submitted to the court for filing but rejected and returned by the filing office. Praecipe, 9/12/18. The trial court treated the praecipes as motions and ultimately declined to allow the corrections, denying or deeming moot each request. Order 11/19/18, at ¶¶ 1-7. In the meantime, the court ordered, and the Newmans timely filed, statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the trial court promptly authored an opinion. This Court consolidated the appeals *sua sponte*, the parties briefed and argued the issues, and this matter is ripe for disposition.

The Newmans present this Court with the following questions, which we have reordered for ease of disposition:

I.    Did the court and [hearing officer] err in failing to recognize their discretion over whether to award support and in failing to apply the reasonable limitations on the amount awarded previously established by this Court?

II.   Did the court and [hearing officer] err in calculating support on two separate occasions without holding a hearing and in denying a hearing on two sets of exceptions?

III.  Did the court and [hearing officer] err in failing to address the request that the money being collected not be reported as arrears when such designation destroyed [the Newmans'] credit, resulted in loss of their passport, resulted in seizure of their tax refund, and subjects their licenses to the

- 14 -

potential of suspension when such draconian measures will continue to for almost 8 years?

IV.   Did the court err in developing and rigidly applying unwritten policies that precluded the filing of important documents including motions, exceptions, a brief and an entry of appearance when these policies conflict with the Rules of Civil Procedure?

Newmans' brief at 6-7 (unnecessary capitalization omitted).

We begin with our standard or review.

Absent a clear abuse of discretion, an appellate court will not disturb a properly entered support order.  A court abuses its discretion not merely by making an error in judgment, but. . . if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Erie Cty. Office of Juvenile Prob. v. Schroeck***, 721 A.2d 799, 802

(Pa.Super. 1998) (citations and internal quotation marks omitted).[11]

---

[11] The Department and the trial court suggest that this is an appeal from the denial of a request to seek relief *nunc pro tunc*, rather than an appeal from denial of the merits of the Newmans' exceptions.  **See** Department's brief at 7; Trial Court Opinion, 11/20/18, at 12.  As such, they contend that our standard of review should incorporate the principles that *nunc pro tunc* relief "should only be granted in exceptional circumstances" such upon "a showing of fraud or its equivalent."  Trial Court Opinion, 11/20/18, at 13 (internal quotation marks omitted).  We disagree.

  As indicated above, the Newmans' exceptions were timely filed, not filed *nunc pro tunc*.  Their *nunc pro tunc* filings were requests to file the prior brief that Attorney Lindquist was to have filed before the remand hearing.  The trial court never ruled upon those requests.  Further, the August 8, 2018 order from which the Newmans appealed expressly disposed of the exceptions after considering their merits, and adopted the hearing officer's recommendations as a support order.  Hence, we deem the standard of review for support orders to be applicable to this appeal.

In their first two issues, the Newmans argue that neither the hearing officer nor the trial court understood the applicable law, ascertained the relevant information at an appropriately-conducted hearing, or correctly applied the law to the evidence in this case. Newmans' brief at 17-26. Accordingly, we examine the law germane to these issues.

The Juvenile Act, which applies to a child alleged to be delinquent, provides that "[t]he costs and expenses of the care of the child shall be paid as provided by [§] 704.1 . . . of . . . the 'Public Welfare Code.'" 42 Pa.C.S. § 6306. Section 704.1 of the Public Welfare Code specifies:

> If, after due notice to the parents or other persons legally obligated to care for and support the child, and after affording them an opportunity to be heard, the court finds that they are financially able to pay all **or part** of the costs and expenses [incurred in performance of their obligation under the Welfare Code and Juvenile Act], the court **may** order them to pay the same and prescribe the manner of payment. Unless otherwise ordered, payment shall be made to the clerk of the court for remittance to the person to whom compensation is due, or if the costs and expenses have been paid by the county, to the appropriate officer of the county.

62 P.S. § 704.1(e) (emphases added).

This Court has summarized these provisions as indicative of the following:

> The Juvenile Act and the Welfare Code clearly demonstrate an intent to seek **some** reimbursement for the cost of care and support for children who commit delinquent acts while a minor and who are subsequently placed in residential facilities. The legislature may be willing to initially pay for these services but makes certain that the public will not bear the entire burden of the cost when parents have the **ability to share** therein.

- 16 -

*Schroeck*, *supra* at 803 (internal quotation marks omitted) (emphases added).

In furtherance of these statutes, Rule 1910.3(a)(4) provides that a support action may be brought "by a public body or private agency having an interest in the case, maintenance or assistance of a person to whom a duty of support is owing." Pa.R.C.P. 1910.3(a)(4). "In actions in which the plaintiff is a public body or private agency . . ., the amount of the order shall be calculated under the guidelines based upon each obligor's monthly net income . . . with the public or private entity's income as zero." Pa.R.C.P. 1910.16-1(a)(3). "In such cases, each parent shall be treated as a separate obligor and the parent's obligation will be based upon his or her own monthly net income without regard to the income of the other parent." *Id*.

Where such support is due, "there is a rebuttable presumption that the guideline-calculated support amount is the correct support amount." Pa.R.C.P. 1910.16-1(d). The rules do "permit the agency to rebut the presumption created by the support guidelines when a child's placement in a government agency implicates the Public Welfare Code, Juvenile Act, and Support Law." *Bradford Cty. Children & Youth Servs. v. Powell*, 889 A.2d 1235, 1239 (Pa.Super. 2005). However, "if the amount of support deviates from the amount of support determined by the [guideline grid] . . ., the trier of fact is required to specify, in writing, the guidelines amount and the reasons for the deviation." *Schroeck*, *supra* at 804.

Once the guideline calculations are made, the fact finder is to apply the following procedure: "(1) determine the parent's present ability to pay; (2) determine the amount of the placement cost for which the parent should be responsible; and (3) explain whether it is relying on the support guidelines or whether it deviated from them." **Powell**, **supra** at 1239.

The Newmans' position is that the hearing officer and trial court "erred as a matter of law and abused their discretion in the application of the relevant statutes in finding that [they] required awarding support when the relevant statutes make an award discretionary." Trial Court Opinion, 11/20/18, at 22 (quoting Rule 1925(b) statement).[12]  The court addressed this claim of error as follows:

> The irony of this argument is singular in its impact.  To say that the [hearing officer] abused her discretion by awarding support in a situation that, *arguendo*, the [hearing officer] had discretion to either award or not award support is astounding.
>
> An award was recommended, and it was done so within the discretion of the [hearing officer], who found [each parent] owed a duty of support and had an ability to pay.  It was adopted as an order by the Court because it was a sound use of the [hearing officer's] discretion.  **Even if, *arguendo*, an award was not mandated by the rules or case law and was in fact discretionary**, it cannot be an abuse of that discretion to grant an award **within the guideline amounts**. Therefore, the award of support should stand as a determination within the discretion of the [hearing officer] and properly sustained by the [c]ourt.

***Id***. (emphasis added).

_____

[12] Unless we indicate otherwise, citations to the trial court's November 20, 2018 opinion refer to the one filed in Ms. Newman's case.

It is apparent from comparing the trial court's prose with the governing legal authority that neither the hearing officer nor the trial court correctly apprehended or applied the law. Both the hearing officer and the trial court took it for granted that the Newmans would pay **all** of the Department's $38,985 in costs, rather than presuming that the guidelines established the appropriate support obligation for the approximately eight months of T.N.'s placement; set the out-of-pocket costs as arrears; and used the support guidelines to set an amount for arrearage payments. While indicating sympathy for the Newmans' circumstances, the court expressed the belief that it lacked the ability to order them to repay less than the full amount of placement costs. This belief is directly contrary to the law, which provides that if the court finds that the parents are able to pay "all or part" of the Department's costs, then it "may order them to pay the same and prescribe the manner of payment." 62 P.S. § 704.1(e).

Pursuant to the authority detailed above, the hearing officer was tasked with calculating the amount of support the guidelines suggested for the months that T.N. was in placement, considering the Newmans' present ability to pay that sum, and then deciding for what portion of T.N.'s placement costs the Newmans should be responsible. If that amount was more or less than the support they would have paid under the guidelines, then the hearing officer was required to explain why it deviated. Neither of these tasks was performed in this case.

Most fundamentally disturbing is the trial court's representation that the support award it adopted upon the hearing officer's recommendation was within the guideline amount. The hearing officer's calculations indicate that the guidelines called for monthly support obligations of $441 for Ms. Newman and $917 for Mr. Newman.[13] The Department sought support for T.N.'s placement at Loysville Youth Development Center from September 2017 through March 2018. *See* N.T. Support Hearing, 10/30/17, at 5. Accordingly, utilizing the guidelines to determine the **support obligations**, rather than to determine a monthly payment amount, the total support amounts were approximately $3,500 from Ms. Newman, and $7,300 from Mr. Newman. Thus, by setting the support obligation as the full amount of the county's placement costs, the hearing officer recommended, and the trial court ordered, that the Newmans actually pay a total support obligation of **nearly four times the amount called for under the guidelines**.[14] Further, they

_____

[13] The Newmans contend that the guideline support amounts were not properly calculated, arguing that their combined net income should have been utilized to determine the amount. *See* Newmans' brief at 24. However, the relevant rule specifies that, when the plaintiff in a support action is a public body, "each parent shall be treated as a separate obligor and the parent's obligation will be based upon his or her own monthly net income **without regard to the income of the other parent**." Pa.R.C.P. 1910.16-1(a)(3) (emphasis added). Therefore, we see no calculation error on the basis alleged by the Newmans.

[14] Working back from the total obligation imposed to the parents' incomes further illustrates how far the support amount in this case deviated from the guidelines. The support recommended by the hearing officer and ordered by

did so not only without requiring the Department to rebut the presumption that the guideline amounts were appropriate or explaining the extreme upwards deviations, but actually thinking that, by reducing the amount of each payment on the $38,985 to a number below the monthly guideline amounts, they had deviated downwards from the guidelines. *See*, *e.g.*, Trial Court Opinion (Mr. Newman), 11/20/18, at 30 (stating that the hearing officer did address the support guidelines and "took into account not only [Mr. Newman's] ability to pay[,] but deviated downward by over $200.00 after the first hearing and by over $500.00 after additional review").

Therefore, we conclude that the hearing officer abused her discretion, and the trial court erred in denying the Newmans' exceptions, by failing to (1) recognize that the law does indeed call for the exercise of discretion in deciding whether to award some or none of the placement costs; (2) appreciate that the guideline calculations set the presumptive amount of the Newmans' total support obligation, not a merely a payment schedule for satisfying the total placement costs; (3) require the Department, in seeking the full amount of placement costs, to rebut the presumption that guideline amounts instead should establish the support obligation; (4) address the Newmans' ability to

---

the trial court for T.N.'s eight months of placement, amounting to roughly $5,000 per month, is approximately the amount the guidelines call for in a support action concerning a child of parents who have **monthly net income of $55,000**. *See* Pa.R.C.P. 1910.16-3.1(a)(1). The hearing officer found the Newmans' combined monthly net income to be **$6,144.54**.

pay more of the placement costs than indicated by the support guidelines; and (5) consider whether the circumstances presented, such as the Newmans' support of other dependents, the Department's ability to recoup costs from T.N.'s Social Security benefits, the short length of time T.N. had been with the Newmans, and the message imposing a burdensome financial obligation on adoptive parents would have upon the adoption of troubled teens, warranted a downward deviation from the guideline amount.

In their next claim of error, the Newmans contend that the hearing officer and the trial court failed to address their request that the support obligation "not be reported as arrears when such designation destroyed [the Newmans'] credit, resulted in loss of their passport[s], resulted in seizure of their tax refund, and subjects their licenses to the potential of suspension when such draconian measures will continue to plague [the Newmans] for almost 8 years[.]" Newmans' brief at 27.

The trial court responded to this claim by asserting that the Newmans failed to raise it prior to appealing to this Court, and, in any event, "these are arrearage amounts because they are costs which [the Department] has already incurred for a child no longer under [the Department's] supervision." Trial Court Opinion, 11/20/18, at 21.

From our procedural history recitation above, it is evident that the Newmans preserved the issues concerning the support being designated as arrears, and the enforcement actions that resulted from the use of that label,

by raising them in their first set of *pro se* exceptions, at the February 20, 2018 exceptions hearing, and again in their second set of exceptions. ***See*** Exceptions, 12/11/17; N.T. Hearing, 2/20/18, at 15-17; Exceptions, 7/2/18, at ¶ 3. Therefore, we consider the merits of their arguments, beginning with the pertinent law.

The Rules of Civil Procedure governing support actions do not include the term "arrears" or "arrearage" in the definition section. Rather, they discuss "overdue support" and "past due support." Those terms are defined as follows:

> "Overdue support," the amount of delinquent support equal to or greater than one month's support obligation which accrues **after entry or modification of a support order** as the result of obligor's nonpayment **of that order**.
>
> "Past due support," the amount of support which accrues **prior to entry or modification of a support order** as the result of retroactivity of that order. When nonpayment of the order causes overdue support to accrue, any and all amounts of past due support owing under the order shall convert immediately to overdue support and remain as such until paid in full.

Pa.R.C.P. 1910.1(c) (emphases added). ***See also*** 23 Pa.C.S. § 4302 (defining overdue support as "[s]upport which is delinquent under a payment schedule established by the court" and past due support as "[s]upport included in an order of support which has not been paid").

The Rules further provide that support orders may be enforced by various remedies including withholding or seizing periodic or lump sum payments from government agencies, seizing assets held in financial

institutions, imposing liens on real property, informing consumer reporting agencies, and suspending driver's and other licenses. **See** Pa.R.C.P. 1910.20(b). However, these remedies are available only for overdue support, not mere past due support. As the explanatory comment provides:

> Consistent with the definitions of past due and overdue support, **these remedies are restricted to cases involving overdue support**, *i.e.*, the delinquent support **arrearages which accumulate as the result of nonpayment of a support order**. They may not be used to collect past due support more quickly so long as the obligor remains current on all provisions of the support order, including repayment of past due support.

*Id*. at Comment. **See also** 23 Pa.C.S. § 4303 (providing for reporting or arrearages to consumer credit reporting agencies "whenever the obligor owes **overdue support**" (emphasis added)); 23 Pa.C.S. § 4308.1(a) ("**Overdue support** shall be a lien by operation of law against the net proceeds of any monetary award . . . owed to an obligor, and distribution of any such award shall be stayed in an amount equal to the child support lien provided for under this section pending payment of the lien." (emphasis added)).

As detailed above, the hearing officer in the instant case explained that it is McKean County's policy to list all of the Department's placement costs as "arrears" in the initial support order.[15] **See** N.T. Support Hearing, 10/30/17,

---

[15] The hearing officer also opted to include costs for anticipated future months of placement as "arrears" in the initial support order. **See** N.T. Support Hearing, 10/30/17, at 22. Given the definitions of the relevant terms discussed *supra*, the hearing officer's decision to list yet-to-be-realized placement costs as arrears in her initial recommendation was patently

at 22.  The definition of the term "arrearage" provided in the hearing officer's recommendation forms is consistent with that of overdue support rather than past due support.  *See*, *e.g.*, Recommendation (Mr. Newman), 6/11/18, at 2 ("If a support obligation is not paid on the date it is due, the amount not paid, called arrearage balances, may be reported to credit agencies, and will constitute a judgment against you by operation of law." (emphasis omitted)).

Yet, there is nothing in the record to suggest that the Newmans ever failed to make payments required by a court order, and thus were never delinquent.  Absent a failure to comply with the support order, **there never should have been any arrearage balance reported as to either Newman**.  Accordingly, the hearing officer erred as a matter of law in designating past due support for placement costs as overdue "arrears,"[16] and thereby subjecting the Newmans to enforcement actions available only for the collection of overdue support.  The trial court erred in denying the Newmans' exceptions on this point, and instead adopting the hearing officer's legally-incorrect recommendations.

_____

erroneous.  The trial court implicitly recognized the validity of the Newmans' exceptions as to future placement "arrears" by remanding for the hearing officer to hold a hearing after T.N.'s placement was concluded to determine the amount of past due support.

[16] The record indicates that the past due support not only was immediately entered as overdue arrearages, but as being more than twelve weeks in arrears.  It is no wonder the Newmans suffered such extreme consequences based on this error.

To clarify for the benefit of future litigation, the procedure the hearing officer should have utilized is as follows. At the initial support hearing in October 2017, the hearing officer should have determined the monthly support obligations in accordance with the law discussed at length above in our resolution of the Newmans' first issue. Assuming that she concluded that the guidelines appropriately established the Newmans' individual support obligations, as the law presumes is the case, and that they had the ability to pay those amounts, the hearing officer then should have calculated past due support for the three months T.N. had already been in placement ($2,751 for Mr. Newman and $1,242 for Ms. Newman), and recommended that the support order require payment of current support to the Department each month for the remainder of T.N.'s placement, as well as an additional amount for each of the Newmans to pay each month towards the past due support.[17] So long as the Newmans continued to make their monthly payments in accordance with the order, no portion of the past due support would have become overdue support, and thus none of it should have been designated as "arrears" and subjected the Newmans to the hardship and harm to their credit ratings that they have had to endure.

---

[17] Once T.N. returned home at the end of March 2018, the order could have been modified to reflect only an obligation to make payments toward the past due support.

Finally, the Newmans maintain that several of their filings were improperly rejected by the McKean County Domestic Relations Office. Newmans' brief at 27-36. However, because the Newmans have received the relief requested in the rejected filings, we deem the issue moot.

In sum, based upon our review of the certified record and the legal principles detailed above, we vacate the trial court's August 10, 2018 orders. On remand, the trial court shall order a hearing to: (1) calculate the Newmans' guideline support obligations for the time period that T.N. was in placement; (2) determine the Newmans' present abilities to pay; (3) ascertain the amount of the placement cost for which the Newmans should be responsible based upon the evidence and circumstances advocated by the parties; and (4) explain whether the determination is based upon the support guidelines or whether and for what reasons deviations were found to be appropriate. *See Powell*, *supra* at 1239.

Orders vacated. Cases remand with instructions. Jurisdiction relinquished.

Judge Musmanno joins the opinion.

Judge Nichols concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2020